Argued and submitted October 2, affirmed November 4, 1992

Walter WEST,
dba Mira Monte West Golf Club,
*Petitioner,*

*v.*

CLACKAMAS COUNTY,
*Respondent.*

(LUBA 92-072; CA A76367)

840 P2d 1354

John W. Shonkwiler, Tigard, argued the cause and filed the brief for petitioner.

Michael E. Judd, Chief Assistant County Counsel, Oregon City, argued the cause for respondent. With him on the brief was Clackamas County Counsel, Oregon City.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner seeks review of LUBA's affirmance of a Clackamas County hearings officer's denial of petitioner's application for a conditional use permit to develop a golf course and related facilities. We affirm.

Although the county denied the application on three grounds, it defended only one of them before LUBA and here. The proposed golf course site contains wetlands. Section 1011.03(B) of the county zoning ordinance requires the outright preservation of "high priority open space," including wetlands, except, *inter alia*, that "[c]ommercial or industrial developments affecting wetlands * * * may be allowed, subject to the provisions of subsection 1011.04." Under section 1011.04, "[h]igh priority open space wetlands * * * shall not be disturbed unless approved by the Planning Director * * * for a specific commercial or industrial development plan," which resolves conflicts or "mitigates" the wetland effects of the development. Noncommercial and nonindustrial uses that affect wetlands are not permissible in areas to which section 1011.03(B) applies, as it undisputably does here.

The hearings officer concluded that the proposed golf course was not a "commercial" development within the meaning of the section as he interpreted it. Therefore, he denied the application.[1] This is the first case of which we are aware in which LUBA's review was governed by the restrictive standard that the Supreme Court recently devised in *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). Under *Clark*, LUBA must affirm a local government's interpretation of the locality's own legislation unless the interpretation "is inconsistent with express language of the [legislation] or its apparent purpose or policy * * *, including its context." 313 Or at 515. LUBA approved the county's interpretation, in essence, and affirmed its decision. Petitioner's first assignment asserts that the county's interpretation and LUBA's approval of it are erroneous.

The word "commercial" is apparently not defined in the ordinance. Consequently, the hearings officer's and

---

[1] There is no contention that the use can be considered an industrial development.

LUBA's opinions and petitioner's and the county's arguments are devoted largely to analogies between section 1011.03(B) and myriad other provisions in the ordinance that contain the word or putatively bear on the meaning of "commercial." The provisions on which the analogies rely, and the focus from which they are viewed, differ in each instance. However, as we understand *Clark v. Jackson County, supra,* the relevant interpretation — at least initially — is that of the final county decision-maker, the hearings officer in this case. Only if that interpretation fails the *Clark* test does it even arguably become permissible to look to the county counsel's or LUBA's alternative bases for arriving at the same ultimate conclusion as the decision-maker's.[2] Similarly, petitioner's arguments can avail him only if he demonstrates that the hearings officer's interpretation is so wrong that it falls outside the margins of error that *Clark* bestows on local governments.

Petitioner does not succeed in that formidable exercise. His understanding that a privately-operated, profit-making golf course is "commercial" makes more abstract sense than the hearings officer's contrary conclusion. However, petitioner must show more than that, but it has not. The word "commercial" is used with considerable frequency in zoning and land use planning law, and it is not a term of art. Its meaning varies with the vast number of contexts in which it appears. For example, it may mean one thing in legislation pertaining to commercial agriculture and something very different in legislation dealing with shopping malls. The point is illustrated by the number of times and contexts in which the word "commercial" and related terms have been identified by the parties, the hearings officer and LUBA in the single zoning ordinance in question.

We said in *Cope v. City of Cannon Beach,* 115 Or App 11, 19, 836 P2d 775 (1992):

> "If any local interpretation could be reversible under the *Clark* standard, this one is not. The language, purpose, policy and 'context' of the two plan policies are so general that the city may interpret them as it did or in almost any other way."

---

[2] Indeed, under *Clark,* it is at least doubtful whether LUBA or we may provide alternative interpretive bases for reaching the same conclusion as did the local decision-maker in cases where the meaning of local legislation is determinative.

The same is true here. The question is not whether the hearings officer's interpretation is "right," but whether it is wrong enough to be reversible under *Clark*. It is not.

We emphasize that this is not a situation where other provisions of the local legislation are clearly relevant to and demonstrative of the linguistic meaning, policy, purpose or context of the provision that the local decision-maker is interpreting. Rather, the ordinance contains a grab bag of provisions that, arguably, are equally relevant and that equally support the various meanings for which the parties contend and that the decision-maker found. Where that state of absolute or near equipoise exists, the selection from the grab bag is for the local deciding entity to make. We also note that the more distant from equipoise the interpretive options or the linguistic support for the local government's interpretion becomes, the greater the burden on the local government to support its interpretation in its findings and conclusions becomes, with corresponding effects on what the appealing party must show to demonstrate error. *See Larson v. Wallowa County*, 116 Or App 96, 840 P2d 1350 (1992). Again, however, this case does not present that problem. Either interpretation of the word "commercial" is wholly supportable and the sufficiency of the county's findings and conclusions — as distinct from their substance — is not challenged by any party and was not questioned by LUBA.

■ Petitioner also argues, under his first assignment, that the hearings officer lacked the authority to render a final decision on the application. He explains:

> "Review of Petitioner's wetland mitigation qualification lies solely with the Planning Director, not the Hearings Officer. Thus, LUBA should have reversed the Hearings Officer for even reviewing the issue of whether the golf course was 'commercial' or not. ZDO § 1011.04 provides: that an applicant will not be entitled to disturb wetlands '. . . unless *approved by the Planning Director* pursuant to subsection 1305.02, for a specific commercial or industrial development plan.' (Emphasis added).
>
> "Here, the Hearings Officer usurped the Planning Director's exclusive review process and made his own determination. The Petitioner's application was filed subject to the Planning Director's review of Petitioner's qualification to mitigate wetlands, the normal procedure in the County. * * *

"* * * The Hearings Officer should have required that the golf course permit be conditioned upon *subsequent* approval of the Petitioner's wetlands mitigation plan by the county's Planning Director under ZDO § 1011.04 and § 1305.02 review." (Emphasis petitioner's.)

That argument, like the first, may depend on an interpretation of the ordinance and be subject to the *Clark* standard of review. On the other hand, it may also entail a question of state law, because it implicitly questions whether the hearings officer's decision is a final land use decision subject to LUBA's jurisdiction under ORS 197.805 *et seq*. If a statutory issue is involved, neither LUBA nor we are limited by the *Clark* standard of review. *See Forster v. Polk County*, 115 Or App 475, 839 P2d 241 (1992); *Kenagy v. Benton County*, 115 Or App 131, 838 P2d 1076 (1992). However, it is not as clear here as it was in *Forster* and *Kenagy* whether the statute or the local provision is ultimately being interpreted. The answer to the jurisdictional question under the statute would seem to turn on what the ordinance means.

Because we are more certain that petitioner's argument is incorrect on its merits than we are about whether it presents a question of state or local law, and because our not reaching the merits might necessitate a series of pointless remands to resolve an obvious question, we will address the merits to decide what amounts to a jurisdictional question under a statute. Petitioner may—or may not—be correct about whether the final decision on wetland mitigation plans is to be made by the planning director under section 1011.04, rather than a hearings officer. He is not correct, however, about who has the authority to decide whether a development affecting wetlands is "commercial" under section 1011.03 and may therefore be permitted at all, with or without an acceptable mitigation plan. Section 1011.03 contains an outright prohibition of wetlands development, but also states exceptions; under section 1011.04, the planning director's authority to consider specific plans arises only in circumstances where an exception to the developmental prohibition exists. Neither section suggests that the final decision on the threshold question of whether development is permissible is his to make. We therefore conclude that the hearings officer made a final and reviewable decision over which LUBA had jurisdiction, and we reject petitioner's first assignment.

Petitioner's second assignment does not require discussion.

Affirmed.