Argued and submitted May 6, decision of the Court of Appeals and the order of the
Land Use Board of Appeals affirmed August 5, 1993

Gene COPE,
Harriet Cope, Colleen Donnelly, Robert Donnelly,
Carlyn R. Draneas, John H. Draneas, Mary Gartshore,
Peter Gartshore, Jack G. Kaady, Marsha LaFarge,
Jack Stutzman, Sharon Stutzman, Betty Wilson,
and Lloyd Wilson,
*Petitioners below,*

William G. HAY,
Georgiana F. Hay, William J. Allred,
and Hallmark Inns & Resorts, Inc.,
*Petitioners on Review,*

*v.*

CITY OF CANNON BEACH,
*Respondent on Review.*

(LUBA 92-019, 92-020; CA A75091; SC S39657)

855 P2d 1083

Dean N. Alterman, of Kell, Alterman & Runstein, Portland, argued the cause and filed the petition for petitioners on review.

Timothy J. Sercombe, of Preston Thorgrimson Shidler Gates & Ellis, Portland, argued the cause for respondent on review. With him on the response were Edward J. Sullivan and Mark J. Greenfield.

GRABER, J.

Fadeley, J., filed a specially concurring opinion.

## GRABER, J.

■        The issue in this case is whether a municipal zoning ordinance took petitioners' property without just compensation, in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.[1]

Until November 5, 1987, the City of Cannon Beach (the city) prohibited the rental of dwelling units in certain residential zones within the city for less than 14 days. On November 5, 1987, Cannon Beach Ordinance 87-12 went into effect, permitting each property owner to rent one residential property in the city for less than 30 days.

In 1992, the city adopted Ordinance 92-1, the ordinance challenged by petitioners in this case. Ordinance 92-1 defines "transient occupancy" as rental for less than 14 days, prohibits the creation of new transient occupancy uses, and requires existing transient occupancy uses to end by 1997. Ordinance 92-1 also includes a "hardship" provision. It provides an exemption for property owners "who can substantiate that an investment made exclusively in the nonconforming use of a dwelling for transient occupancy can not be adequately amortized" within the five-year period between adoption of the ordinance and the required termination date.

Petitioners own rental properties in the city. They appealed the adoption of Ordinance 92-1 to the Land Use Board of Appeals (LUBA), arguing, among other things, that the ordinance works a taking of their property without just compensation in violation of the Fifth and Fourteenth Amendments. LUBA upheld the ordinance. With respect to petitioners' constitutional claim, LUBA held that petitioners could not establish a taking until they applied for, and were

---

[1] The Takings Clause of the Fifth Amendment to the Constitution of the United States provides:

"[N]or shall private property be taken for public use, without just compensation."

That clause of the Fifth Amendment is made applicable to the states by the Fourteenth Amendment. *Nollan v. California Coastal Comm'n*, 483 US 825, 827, 107 S Ct 3141, 97 L Ed 2d 677 (1987).

Petitioners raise no claim under the Oregon Constitution. We therefore limit our analysis to federal law.

denied, the hardship relief provided in the ordinance. *Cope v. City of Cannon Beach*, 23 Or LUBA 233, 240-41 (1992).

On judicial review,[2] the Court of Appeals agreed with LUBA. *Cope v. City of Cannon Beach*, 115 Or App 11, 14, 836 P2d 775 (1992). Petitioners sought review in this court, claiming that "the challenged ordinance on its face works a taking of the property rights of petitioners and others to continue their uses, in violation of the Fifth and Fourteenth Amendments to the United States Constitution."[3] We affirm on other grounds. We hold that the challenged ordinance does not violate the Fifth and Fourteenth Amendments to the Constitution of the United States in the manner asserted by petitioners.

■■ In deciding a claim that a governmental regulation constitutes a taking of property without just compensation in violation of the Fifth and Fourteenth Amendments, this court applies principles established by the Supreme Court of the United States. We first note that petitioners challenge the constitutionality of the ordinance on its face. *See Yee v. City of Escondido, Cal.*, 503 US ___, 112 S Ct 1522, 1532, 118 L Ed 2d 153 (1992) (allegation that an ordinance is unconstitutional no matter how it is applied is a facial challenge). That being so, petitioners' challenge is "ripe" for review. *See ibid.* (ripeness of a facial challenge does not depend on the extent to which the property owners are deprived of the economic uses of their particular pieces of property or the extent to which the property owners are compensated); *Hodel v. Virginia Surface Mining & Recl. Assn.*, 452 US 264, 101 S Ct 2352, 69 L Ed 2d 1 (1981) (where a takings claim arose in the context of a facial challenge to a statute and thus presented no concrete controversy concerning the application of the statute or its

---

[2] ORS 197.850 provides for judicial review of a final order of the Land Use Board of Appeals (LUBA). ORS 197.850(9) provides:

"The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"(a) The order to be unlawful in substance or procedure * * *;

"(b) The order to be unconstitutional; or

"(c) The order is not supported by substantial evidence in the whole record * * *."

[3] Petitioners did not seek review of the Court of Appeals' holdings on several other issues, and we do not consider those issues here.

effect on specific parcels of land, the Court considered on the merits whether the mere enactment of the act constituted a taking); *Agins v. Tiburon*, 447 US 255, 260, 100 S Ct 2138, 65 L Ed 2d 106 (1980) (same).[4] We turn, then, to the merits of petitioners' claim.

In *Agins v. Tiburon, supra*, property owners challenged municipal zoning ordinances, adopted after the owners acquired their property, that restricted the number of houses that could be built on the undeveloped land. The Supreme Court of the United States held that the zoning ordinances, on their face, did not take the owners' property without just compensation. 447 US at 259. The Court explained that a land use regulation

"*effects a taking if the ordinance does not substantially advance legitimate state interests or denies an owner economically viable use of his land.* The determination that governmental action constitutes a taking is, in essence, a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest. Although no precise rule determines when property has been taken, the question necessarily requires a weighing of private and public interests. * * *

"In this case, the zoning ordinances substantially advance legitimate governmental goals. * * * The specific zoning regulations at issue are exercises of the city's police power to protect the residents of [the city] from the ill effects of urbanization. Such governmental purposes have long been recognized as legitimate.

"* * * The zoning ordinances benefit the appellants as well as the public by serving the city's interest in assuring careful and orderly development of residential property * * *. There is no indication that the [property owners'] tract is the only property affected by the ordinances. [The property owners] therefore will share with other owners the benefits

---

[4] Petitioners are not precluded, in the future, from challenging the application of Ordinance 92-1 to their specific properties. However, those challenges, should petitioners choose to bring them, will not be ripe for judicial resolution until petitioners seek, and are denied, relief under the "hardship" provision of the ordinance. *See Hodel v. Virginia Surface Mining & Recl. Assn.*, 452 US 264, 297 & n 40, 101 S Ct 2352, 69 L Ed 2d 1 (1981) (Supreme Court noted that, although the statute at issue in that case, on its face, did not work a taking of the plaintiff's property, the plaintiff was not precluded from showing that the application of the statute to his property, including the statute's variance and waiver provisions, effected a taking).

and burdens of the city's exercise of its police power. In assessing the fairness of the zoning ordinance, these benefits must be considered along with any diminution in market value that the [property owners] might suffer." *Id.* at 260-62 (emphasis added; citations and footnote omitted).

The Court also determined that the ordinances permitted some, albeit limited, residential development of the property. *Id.* at 262. *See also Lucas v. South Carolina Coastal Council,* 505 US ___, 112 S Ct 2886, 2893-94, 120 L Ed 2d 798 (1992) ("while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking"; Supreme Court cited and applied *Agins* test, whereby the Fifth Amendment is violated when a land use regulation does not substantially advance legitimate state interests or denies an owner economically viable use of the land); *Nollan v. California Coastal Comm'n,* 483 US 825, 834, 107 S Ct 3141, 97 L Ed 2d 677 (1987) (citing and applying *Agins* test, Court noted that it has "long recognized" that a land use regulation does not effect a taking if it substantially advances legitimate state interests and does not deny an owner economically viable use of the land); *Keystone Bituminous Coal Assn. v. DeBenedictis,* 480 US 470, 485, 107 S Ct 1232, 94 L Ed 2d 472 (1987) (restating and applying test established in *Agins,* Court concluded that enactment of state land conservation statute at issue did not effect a taking of the plaintiff's property); *Dolan v. City of Tigard,* 317 Or 110, 116-21, 854 P2d 437 (1993) (citing and applying *Nollan* and *Agins* test, this court held that the regulation in question did not take the petitioners' property without just compensation in violation of the Fifth Amendment); *Stevens v. City of Cannon Beach,* 317 Or 131, 141-48, 854 P2d 449 (1993) (citing and applying *Lucas* and *Agins* test, this court upheld administrative rules and ordinances against a facial challenge to their validity under the Takings Clause of the Fifth Amendment).

In *Yee v. City of Escondido, Cal., supra,* 112 S Ct at 1529, the Supreme Court held that a regulation affecting the relationship between landlord and tenant (in that case, an ordinance placing a ceiling on rents that a landowner could charge) is a land use regulation, to which the Supreme Court will apply its usual analysis in determining whether a regulatory taking has occurred. We therefore apply the two-part test

established by the Supreme Court in the cited "regulatory takings" cases to Ordinance 92-1.

We first ask whether the challenged regulation substantially advances legitimate governmental interests. Ordinance 92-1 was adopted by the city as an amendment to its comprehensive plan for community development. Goals of the comprehensive plan include the provision of affordable housing for permanent residents and the preservation of the residential character of certain neighborhoods.[5] In a 1991 study, the city's planning commission determined that, by encouraging the construction and ownership of housing units intended for the transient occupancy market, the 1987 ordinance permitting those rentals had diminished the availability of affordable housing for permanent residents. The planning commission also determined that the presence of transient occupants in residential zones adversely affected the "character" and "integrity" of residential areas by, for example, resulting in increased traffic and noise levels in those areas. The planning commission concluded that permitting transient occupancy of dwelling units in residential zones had "substantial" and "unmitigatable" adverse impacts on those zones that were "inconsistent" with the purposes of the city's comprehensive plan. In response to those concerns, the city adopted Ordinance 92-1.

We conclude that Ordinance 92-1 substantially advances legitimate governmental interests. *See Agins v. Tiburon, supra,* 447 US at 260 (stating first part of test). The interests in securing affordable housing for permanent residents and in preserving the character and integrity of residential neighborhoods are legitimate governmental interests, and the challenged ordinance has a substantial nexus to the achievement of those aims. *See Nollan v. California Coastal Comm'n, supra,* 483 US at 835, 837 (the Supreme Court has "made clear" that a broad range of governmental purposes and regulations are "legitimate," including those related to "landmark preservation," "scenic zoning," and "residential zoning"; Court looks for a sufficient "nexus" between the

---

[5] The city's comprehensive plan is, in turn, designed to be consistent with the requirements of Oregon's Statewide Planning Goals, including Goal 2 (Land Use Planning), Goal 8 (Recreational Needs), Goal 9 (Economic Development), and Goal 10 (Housing).

regulation and the interest intended to be served); *Penn Central Transp. Co. v. New York City*, 438 US 104, 129, 98 S Ct 2646, 57 L Ed 2d 631 (1978) (Supreme Court "has recognized, in a number of settings, that States and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city").

■    We next consider whether Ordinance 92-1, by prohibiting transient occupancy, denies property owners economically viable use of their properties. *See Agins v. Tiburon, supra*, 447 US at 260 (stating second part of test). We conclude that it does not. On its face, Ordinance 92-1 permits rentals of dwellings for periods of 14 days or more. The ordinance also permits the owners themselves to reside in the dwellings. Although those uses may not be as profitable as are shorter-term rentals of the properties, they are economically viable uses.

Petitioners argue that, because "[t]he right to continue an existing legal use is a property right," removal of that existing use is a taking without regard to other economically viable uses. Petitioners' focus is too narrow. In *Keystone Bituminous Coal Assn. v. DeBenedictis, supra*, 480 US at 497, the Supreme Court of the United States held that the "test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property." The Court went on to note that, " 'where an owner possesses a full "bundle" of property rights, the destruction of one "strand" of the bundle is not a taking because the aggregate must be viewed in its entirety.' " *Ibid.* (quoting *Andrus v. Allard*, 444 US 51, 65-66, 100 S Ct 318, 62 L Ed 2d 210 (1979)). In *Penn Central Transp. Co. v. New York City, supra*, the Supreme Court observed:

> "Zoning laws generally do not affect existing uses of real property, but 'taking' challenges have also been held to be without merit in a wide variety of situations when the challenged governmental actions prohibited a beneficial use to which individual parcels had previously been devoted and thus caused substantial individualized harm." 438 US at 125; *see also id.* at 125-27 (listing examples).

In summary, we hold that Ordinance 92-1 meets the two-part test established by the Supreme Court of the United

States in its regulatory takings cases involving facial challenges. Ordinance 92-1 substantially advances legitimate governmental interests, and it does not deny property owners economically viable use of their properties.

The decision of the Court of Appeals and the order of the Land Use Board of Appeals are affirmed on other grounds.

**FADELEY, J.,** specially concurring.

The only issue in this case is whether an ordinance of the City of Cannon Beach "takes" the residential real property of petitioners. Petitioners contend only that their property is taken without just compensation in violation of the takings component of the Fifth Amendment that applies to state and city government through the Fourteenth Amendment to the Constitution of the United States.

The city's comprehensive plan states that no additional land shall be zoned RM (residential-motel). The city's planning commission found that permitting residential housing to be used and rented as if the houses were motels drove up the price of residences in Cannon Beach, thereby contravening an applicable land use goal that requires each city's comprehensive plan to permanently provide an adequate supply of affordable housing.

The property involved is already developed as residential housing. That was its character and use before the ordinance was enacted. It retains that character and permitted use after enactment of the challenged ordinance.

I write separately because I do not consider that federal cases involving undeveloped property are controlling authority here, yet the lead opinion relies on them in part. The "any-viable-economic use" standard touted in undeveloped property cases does not apply in this case. Other standards do.

No physical invasion or easement is involved, nor are the owners compelled to permit a governmentally imposed use of their property. No preexisting use for residential rental purposes is terminated, albeit the level of rental income very likely has been reduced. There is no claim that the government is planning to use the property. The effect of laws reducing rental income has been held by the Supreme Court

of the United States to be no taking, even when combined with other laws interfering with an owner's unfettered use of property. *Yee v. City of Escondido, Cal.*, 503 US ____, 112 S Ct 1522, 118 L Ed 2d 153 (1992).

Therefore, I join in the result reached on the federal question before the court.