Argued and submitted August 9, affirmed September 22, 1993

FRIENDS OF THE METOLIUS
and Toni Foster,
*Petitioners,*

*v.*

JEFFERSON COUNTY,
Dan Richartz and Cindi Richartz,
*Respondents.*

(93-002; CA A80307)

860 P2d 278

Bill Kloos, Eugene, argued the cause for petitioners. With him on the brief was Johnson & Kloos, Eugene.

Steven W. Abel, Portland, argued the cause for respondents Dan Richartz and Cindi Richartz. With him on the brief

were Mildred J. Carmack and Schwabe, Williamson & Wyatt, Portland.

No appearance for respondent Jefferson County.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

DEITS, P. J.

Riggs, J., concurring.

Durham, J., concurring.

## DEITS, P. J.

Respondents Richartz (respondents) applied to Jefferson County for a conditional use permit, to allow them to modify an existing resort and RV park in the Camp Sherman resort residential zone and to establish a 15-cabin facility for "traveler's overnight accommodations." The county granted the application and petitioners appealed to LUBA. LUBA remanded the county's decision, but it rejected all but one of petitioners' assignments. Petitioners seek our review, contending that LUBA misapplied *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), and our decisions that implement *Clark*, in rejecting three of petitioners' assignments. We affirm.

Under the county's zoning ordinance for the area, single-family dwelling units are permitted uses "subject to siting standards" that are set forth in the ordinance. "Traveler's accommodations" are conditional uses that are "subject to additional criteria," which the ordinance also sets forth. The ordinance establishes a one-acre minimum lot size for any single-family dwelling unit, and a two-acre minimum lot size for most other uses, including traveler's accommodations, regardless of the number of units they contain. Respondents' property consists of slightly more than three acres and, under their proposal, it will contain 15 separate units. Petitioners contend that the single-family dwelling density requirement is applicable to the proposed use and that the proposal does not satisfy the requirement.

The county governing body disagreed. It construed the ordinance provisions and concluded that, although the units might come within the definitions of both traveler's accommodations and single-family dwellings, the use that respondents propose is only the former and the approval criteria and density requirements for traveler's accommodations are, therefore, the sole applicable ones. Further, relying on an ordinance section that provides generally that alterations of certain preexisting conditional uses are subject to the ordinance's requirements for conditional uses, the governing body concluded that the siting standards for permitted uses, including single-family dwellings, are not applicable to respondents' proposal to modify the existing conditional use on the property.

LUBA applied the standard of review defined in *Clark v. Jackson County, supra,* which allows it to reject local interpretations of local legislation only if they are contrary to the language, or "apparent" purpose or policy of the legislation, read in its context. LUBA concluded that

> "the county's interpretation expressed in its decision that the proposal constitutes traveler's accommodations, and is only subject to standards applicable to traveler's accommodations, is not clearly contrary to the express words, policy or context of the [ordinance], and we defer to it."

LUBA also rejected petitioners' reliance on section 1001 of the ordinance, which provides:

> "Where the conditions imposed by a provision of this ordinance are less restrictive than comparable conditions imposed by any other provisions which are more restrictive, the more restrictive shall govern."

LUBA reasoned that, given the county's interpretation that traveler's accommodations "need only comply with standards applicable to them, and not with standards applicable to single-family dwellings, including density standards," the approval conditions applicable to the two uses are not "comparable" and section 1001 does not apply.

Finally, again on the strength of *Clark,* LUBA rejected petitioners' challenge to the county's determination that the proposed use comes within the definition of "traveler's accommodations," notwithstanding the county's condition of approval that allows the owners of the units to occupy them for up to 36 days a year.

In their first assignment to us, petitioners argue that the county's interpretation is reversible, even under the *Clark* standard. They contend that the proposed use clearly comes within the unambiguous definitions of both traveler's accommodations and single-family dwellings and, under section 1001, the more restrictive density requirements for the latter apply. According to petitioners, nothing in the ordinance suggests or supports the interpretation that the existence of or criteria for the two uses are mutually exclusive, or that the more restrictive standards cannot be applied when a proposal that entails both uses is presented.

We do not agree that the county's interpretation is beyond the insulation for local interpretations that *Clark v. Jackson County, supra,* creates. The density requirements for the two uses do differ. Although the actual physical structures that respondents seek to place on the property might come within the definitions of both uses, the only use to which respondents propose to put them are traveler's accommodations. Moreover, the interpretation that only conditional use approval criteria apply to the proposal lends independent support to the county's conclusion that the single-family dwelling density requirements are not applicable. However we might interpret the ordinance if the question were for us to decide, we agree with LUBA that *Clark* requires us to accept the county's interpretation. It is not clearly wrong. *See Goose Hollow Foothills League v. City of Portland,* 117 Or App 211, 217, 843 P2d 992 (1992).

In their second assignment, petitioners argue that the county's findings are inadequate to support the interpretation that LUBA attributed to them, and that LUBA, in effect, adopted its own interpretation of the ordinance in the guise of construing the county's order. *See Weeks v. City of Tillamook,* 117 Or App 449, 453-54, 844 P2d 914 (1992), and authorities there cited. We do not agree with petitioners that the county's order fails to express its interpretation. Although *Weeks* does hold that the initial responsibility to articulate an interpretation of relevant local legislation belongs to the local government, rather than to LUBA, we do not share petitioners' understanding that *Weeks* precludes LUBA from considering and analyzing what the local government has said. We do not find the county's interpretation here to be unclear or inadequate, and we do not find anything in LUBA's discussion to be inconsistent with the county's order or to depart from its meaning. We reject the second assignment.

■ In their third assignment, petitioners challenge LUBA's affirmance of the county's interpretation that the proposed use can constitute "traveler's accommodations" under the ordinance. Petitioners assert that the allowance of owner-occupancy during part of the year is inconsistent with that use and appears to be a "gratuitous grafting of the single-

family use onto the traveler's accommodation use." According to petitioners, the owner-occupancy provision could be implemented to make the units *de facto* single-family "part-time vacation residences," which are never used to accommodate travelers and which have not been tested against and do not meet the criteria for single-family dwellings.[1]

We agree with LUBA that, under *Clark*, it and we are bound to accept the county's interpretation that the "*de minimis*" owner-occupancy condition does not defeat the qualification of the units as traveler's accommodations. Insofar as petitioners' concern is that the units may, in fact, be used or marketed for something other than the traveler's accommodations defined in the proposal and approved by the county, the occasion and opportunity for rectifying that problem would be in connection with any later land use decision giving rise to it or through other remedies that may become available if it does arise. *See* ORS 197.825(3)(a).

Affirmed.

**RIGGS, J.,** concurring.

I agree with the lead opinion, and I also agree with Judge Durham's concurring opinion.

**DURHAM, J.,** concurring.

I agree with the lead opinion that, under the vestigial scope of review that remains after *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), we are compelled to accept the county's interpretations of the ordinance. I write separately to note that, if meaningful review of the kind that predated *Clark* were possible, the county's failure to apply the density requirements for single-family dwellings could not be sustained.

The units that respondents propose to install are *both* traveler's accommodations and single-family dwellings. The county's order appears to admit as much, but then goes on to apply only the standards for approving traveler's accommodations, because the "use proposed for the cabins is as * * * traveler's accommodations." In other words, the county

---

[1] Nothing in the proposal *requires* rentals to nonowners during the periods that the owners do not occupy the cabins.

has "interpreted" the ordinance to make the applicable approval criteria depend on the applicants' stated intention of what they will *do* with the cabins, rather than on what the cabins *are*. The fallacy in that interpretation is graphic in the light of section 1001, which expressly contemplates that one facility can embody two separate "uses" and, when it does, the criteria for approving the more restricted use apply.

However, it is impossible for us to say that the interpretation is "clearly wrong," and thus reversible under *Clark*. *See Goose Hollow Foothills League v. City of Portland*, 117 Or App 211, 217, 843 P2d 992 (1992). There are too many provisions and too many interpretations that enter into the county's rationale for us to reject its end result.[1] For example, as the lead opinion indicates, we cannot ascribe clear error to the county's reliance on the ordinance provision that ostensibly makes its conditional use approval criteria exclusive for the proposal to alter this existing conditional use. Nevertheless, were it not for *Clark*, that reliance could and would be readily rejected. It is a transparent device for bolstering the county's assiduous efforts to remove the single-family dwelling approval criteria from the picture, although respondents' proposal *is* for the installation of single-family dwellings.

We suggested in *Goose Hollow Foothills League v. City of Portland, supra*, 117 Or App at 217, that the sheer number of separate provisions in local land use legislation, which can arguably be read as applying to any given land use decision, makes "local interpretation" an open-ended exercise that can seldom fail the *Clark* test. Similarly, we said in *West v. Clackamas County*, 116 Or App 89, 93, 840 P2d 1354 (1992), that the ordinance there "contains a grab bag of [arguably relevant] provisions" and, under *Clark*, "the selection from the grab bag is for the local deciding entity to make."

This case does not appear to involve acknowledged local provisions that *directly* implement *specific* requirements of the statewide planning goals. However, the interpretive latitude that local governments now enjoy could as

---

[1] Over and above the provisions that it was necessary for the lead opinion to mention specifically, the county's order and the parties' arguments touch on numerous provisions in four separate articles of the zoning ordinances, as well as language in an appendix to the county comprehensive plan.

readily be applied to provisions of that kind as to those in question, with the effect that local legislation that complies facially with the goals is applied in a manner that violates them.[2] Accordingly, this case illustrates the accuracy of our prediction in *Cope v. City of Cannon Beach*, 115 Or App 11, 18, 836 P2d 775 (1992), *aff'd on unrelated grounds* 317 Or 339, 855 P2d 1083 (1993): *Clark* "may well have the effect of making post-acknowledgment compliance with state law a matter of local option."

Because *Clark* does not allow otherwise, I agree that the local interpretation must be upheld.

---

[2] State *statutes*, unlike the goals, remain directly applicable to post-acknowledgment land use decisions by local governments. *Forster v. Polk County*, 115 Or App 475, 839 P2d 241 (1992).