Argued and submitted September 14, affirmed October 20, 1993

# DEPARTMENT OF LAND CONSERVATION AND DEVELOPMENT,
*Petitioner,*

*v.*

# CROOK COUNTY,
Ochoco Creek Resort, Inc.,
and Marvin Harris,
*Respondents.*

(93-050; CA A80807)

860 P2d 907

John T. Bagg, Assistant Attorney General, argued the cause for petitioner. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Alan Rappleyea, Crook County Counsel, and Daniel H. Kearns argued the cause for respondents. With Daniel H. Kearnson on the brief was Preston Thorgrimson Shidler Gates & Ellis.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

Edmonds, J., dissenting.

## WARREN, P. J.

Petitioner seeks review of LUBA's decision affirming Crook County's approval of a preliminary development plan for a planned unit development (PUD). Petitioner attempted to raise issues in the county proceedings concerning the compliance of the proposal with county comprehensive plan and zoning provisions. However, the county governing body concluded that, under its interpretation of applicable local legislation, those issues had been finally resolved in the earlier review stage that resulted in approval of the outline development plan for the PUD, and the issues could not be "revisited" in the later proceedings on the preliminary development plan.[1] LUBA affirmed the county's interpretation of its legislation on the basis of *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), and *West v. Clackamas County*, 116 Or App 89, 840 P2d 1354 (1992). We also affirm.

As relevant to the issue before us, Article 3 of the applicable ordinance relates to the approval procedures for subdivisions, and Article 6 relates to the procedures for PUD approvals. Section 6.100 explains the relationship between the two articles:

"Except as otherwise set forth in this Article, the procedure for review and approval of a planned unit development is the same as set forth for a standard subdivision in this ordinance."

Section 3.030 provides, in part:

"(3) The purpose of the Outline Development Plan is to make a determination that the particular proposal

---

[1] Under the county's framework, PUD proposals are subject to three separate review stages: outline development plan, preliminary development plan and final development plan. The first stage is not mandatory, but the applicant pursued it here.

Petitioner participated in the outline development plan review proceedings before the planning commission, and made essentially the same arguments then that it sought to make in the proceedings on the preliminary development plan. Petitioner did not invoke its right to appeal to the governing body from the commission's approval of the outline development plan. As relevant here, there was no change in the PUD proposal that was submitted at the two stages.

The county's order used the word "appealable" as well as the word "final" in describing the effect of outline development plan approvals on comprehensive plan and zoning issues. If they are final, they are perforce appealable to LUBA after county remedies have been exhausted.

complies with the County's Comprehensive Plan and the applicable zoning provisions. * * *

"(4)  The approval or disapproval of the Outline Development Plan by the [Planning] Commission shall be final unless the decision is appealed to the County Court. The approval or disapproval shall be binding upon the county relative to compliance with the comprehensive plan and applicable zoning provisions."

Section 6.110(3) provides:

"Commission approval of the outline development plan shall constitute only a provisional approval of the planned unit development contingent upon approval of the preliminary development plan."

Finally, section 6.130(1) provides, in relevant part:

"The Commission, having previously provisionally approved the proposed planned unit development, shall then either reapprove, disapprove or reapprove with modifications the planned unit development based on the preliminary development plan."

The county relied, *inter alia*, on sections 3.030 and 6.100 for its interpretation that the final determination of compliance with comprehensive plan and zoning ordinance provisions had occurred at the outline development plan approval stage. It reasoned that sections 3.030(3) and (4) expressly so provide with respect to subdivisions and section 6.100 makes the subdivision provisions applicable to PUD's.[2]

Petitioner argues that that interpretation is wrong and is reversible under *Clark*. It relies on sections 6.110(3) and 6.130(1), and contends that the requirement in the latter that the proposed development be "reapprove[d], disapprove[d] or reapprove[d] with modifications" at the preliminary development plan review stage is inconsistent with the finality language in section 3.030 and is contrary to the county's interpretation that comprehensive plan and zoning

---

[2] The county's order also contains language that premises finality on considerations other than the two ordinance sections and that suggests that issues other than comprehensive plan and zoning issues were finally decided at the initial review stage. This case does not require us to and we do not address any aspect of the county's interpretation except its conclusion that the comprehensive plan and zoning compliance determinations are finally decided at the first stage by virtue of the two ordinance provisions.

compliance determinations become final and binding at the earlier stage of outline development plan approval. According to petitioner, the term "reapproval" "may only be understood to mean that the county makes another decision [at the preliminary development plan review stage] regarding the Outline Development Plan or determines anew that the information included in the Outline Development Plan meets county requirements." Petitioner argues further that, under section 6.100, the Article 6 provisions prevail over section 3.030, to the extent of inconsistency.[3]

The necessary premise of petitioner's argument is that the "reapproval" provision in the Article 6 sections is in conflict with the language in section 3.030 that attaches finality to comprehensive plan and zoning compliance determinations made at the initial review stage, and that section 3.030 therefore cannot be given the literal effect accorded it under the county's interpretation. Even assuming the correctness of petitioner's premise, *but see* n 3, *supra*, petitioner's argument defeats itself. We have said that the inquiry under *Clark* "is not whether the [local government's interpretation] was 'right,' but whether it was clearly wrong." *Goose Hollow Foothills League v. City of Portland*, 117 Or App 211, 843 P2d 992 (1992). In *West v. Clackamas County, supra*, 116 Or App at 93, we further explained that, in the light of *Clark*,

"the ordinance contains a grab bag of provisions that, arguably, are equally relevant and that equally support the various meanings for which the parties contend and that the [local] decision-maker found. Where that state of absolute or near equipoise exists, the selection from the grab bag is for the local deciding entity to make."

*See also Reusser v. Washington County*, 122 Or App 33, 857 P2d 182 (1993).

The situation in this case is the same. *Facially*, section 3.030 and the Article 6 provisions are, arguably,

---

[3] Petitioner makes a number of other points in support of its conclusion, which we do not find persuasive.

As will be discussed further in the text, we note that the county's order specifically addresses the Article 6 provisions on which petitioner relies, and squares them with its interpretation. *Compare Gage v. City of Portland*, 123 Or App 269, 860 P2d 282 (1993).

equally relevant and applicable. Assuming that they conflict, *Clark* mandates that the county's interpretation as to which of them applies may not be disturbed.

Petitioner is also not assisted by its reliance on section 6.100 for its contention that the Article 6 sections rather than those in Article 3 apply when they conflict. That argument is simply a different way of stating the argument we have rejected. It presupposes that sections 6.110(3) and 6.130(1) necessarily have *some* application to comprehensive plan and zoning compliance determinations that were made at the outline development plan review stage, pursuant to section 3.030. However, the county concluded that section 3.030 is the only provision that determines when those issues are to be finally decided, and that the two Article 6 provisions have no bearing on that question. Given that interpretation of the supposedly conflicting provisions themselves, the county was not required to look to section 6.100 to decide which of the provisions prevails. *See Friends of the Metolius v. Jefferson County*, 123 Or App 256, 860 P2d 278 (1993).

■     When all is said and done, petitioner's argument shows nothing more than that there is an arguably tenable interpretation of the legislation that differs from the county's. Under *Clark*, however, the question is not whether local legislation *can* be interpreted in a way that differs from the local government's interpretation, but whether the local interpretation is "clearly wrong." Petitioner has not demonstrated clear error here.

We agree with much that the dissent says about the problems that the *Clark* standard of review creates in general and as applied here. *See Cope v. City of Cannon Beach*, 115 Or App 11, 836 P2d 775 (1992), *aff'd on unrelated grounds*, 317 Or 339, 855 P2d 1083 (1993); *Friends of the Metolius v. Jefferson County, supra* (Durham, J., concurring). As with petitioner's argument, however, the ultimate point that the dissent makes is that the county's interpretation relies on the express language of section 3.030, rather than on the very arguably contrary express language in Article 6. *Clark* leaves us no more latitude than it leaves petitioner to substitute our judgment for the county's as to *which* conflicting express language in its legislation is applicable. The Supreme Court says that *Clark* is the law, and we will enforce it, pending the

day that that court provides the much needed clarification for which the dissent calls.[4]

Petitioner's remaining assignment does not warrant discussion.

Affirmed.

**EDMONDS J.,** dissenting.

The majority's opinion in this case demonstrates again the difficulty that the test articulated in *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), causes in determining whether deference must be given to a local government's interpretation of its own land use ordinances. In *Clark*, the court said:

> "If a county has construed an ordinance in a manner that clearly is contrary to the enacted language, LUBA acts within its scope of review in finding that the county improperly construed the applicable law." 313 Or at 514.

Here, there is express language in the ordinances governing approval of planned unit developments that says:

> "Commission approval of the outline development plan shall constitute *only a provisional approval* of the planned unit development *contingent* upon approval of the preliminary development plan." Section 6.110(3). (Emphasis supplied.)

> "The Commission, having previously *provisionally* approved the proposed planned unit development shall then either *reapprove, disapprove or reapprove with modifications* the planned unit development based on the preliminary development plan." Section 6.130(1). (Emphasis supplied.)

The county says that those provisions do not mean what they say, because the decision on the outline development plan about compliance with the comprehensive plan and zoning ordinance requirements is final. It explains:

> "After a Development Proposal is given provisional approval at the Outline Plan stage, the developer should be entitled to rely on that approval and proceed with detailed and expensive engineering design work.

---

[4] Oregon Laws 1993, chapter 792, has not yet taken effect. We do not address what effect, if any, it may have on issues similar to the ones here that may arise in the future.

"At least to the extent a Development Proposal does not change between review stages in the PUD process, the applicant should be able to rely on the fact that issues resolved at an earlier stage cannot be readdressed subsequently. * * *

"* * * * *

"Finally, the notion that all issues resolved at one stage of the PUD review process shall be not be raised at a subsequent stage is critical to the economic development of the County."

Those may be good reasons for promulgating an ordinance that says that the decision for a planned unit development at the Outline Plan stage is final, but they are contrary to the express language of sections 6.110(3) and 6.130(1). If those were the only ordinances that were germane to the analysis, we should have no trouble saying that the county's interpretation "clearly is contrary to the enacted language."

However, the majority and LUBA uphold the county's interpretation because of the language of section 3.030(4) that pertains to the approval of subdivisions:

"The approval or disapproval of the Outline Development Plan by the Commission shall be final unless the decision is appealed to the County Court. The approval or disapproval shall be binding upon the county relative to compliance with the comprehensive plan and applicable zoning provisions."

Section 6.100 makes the procedure for review and approval of a planned unit development, "[e]xcept as otherwise set forth in this Article," the same as the procedure for review and approval of subdivisions. In the light of the quoted language, the only reasonable interpretation of the ordinances must be that section 3.030(4) does not control approval of planned unit developments, because the express language of sections 6.110(3) and 6.130(1) is contrary to its "finality" provisions.

The county deems section 3.030(4) to be controlling because it is consistent with a policy of decision finality. The majority says that is just another example of "grab bag" decision making for which the local government is entitled to deference under *Clark*. Petitioner says:

"LUBA's deference to the county's construction of its ordinance is appropriate where an ordinance lends itself to more than one reasonable interpretation. Here, however, the

county ordinance does not support its own or LUBA's interpretation. * * *

"The public, other government agencies, businesses and other entities who may come calling should not have cause to fear that the ordinance does not mean what it says. Particularly, where a right of appeal may be affected, those approaching a county ordinance should be able to rely on the plain language of the ordinance."

Petitioner is right. Land use ordinances are intended to govern volatile issues that affect the public as well as private property owners. If a county can arbitrarily pick and choose what part of an ordinance it wishes to apply without considering the context of the entire ordinance, and then rationalize that choice in a way inconsistent with principles of statutory construction, there becomes no definition or certainty in meaning that can effectively govern those issues. Petitioner correctly relied on the express language of the ordinance. Either the majority makes the wrong application of *Clark* to this case or the Supreme Court needs to clarify what it meant in *Clark*. Otherwise, applicants for land use permits will continue to find themselves in a standardless jungle of rule interpretation.

I dissent.