Argued and submitted April 4, affirmed on petition; cross-petitions dismissed
as moot July 5, 2005

FRIENDS OF THE METOLIUS,
William Johnson,
and Tomas Finnegan Ryan,
*Respondents - Cross-Petitioners,*

*v.*

JEFFERSON COUNTY,
*Cross-Respondent,*

*and*

Gordon C. JONES
and Jeffrey Jones,
*Petitioners - Cross-Respondents.*

2004-119; A127558

116 P3d 220

Robert S. Lovlien argued the cause for petitioners - cross-respondents. With him on the briefs was Bryant, Lovlien & Jarvis, P.C.

Bill Kloos argued the cause for respondents - cross-petitioners Friends of the Metolius and William Johnson. With him on the brief was Law Office of Bill Kloos, PC.

Tomas Finnegan Ryan argued the cause and filed the brief *pro se* for respondent - cross-petitioner Tomas Finnegan Ryan.

Jacqueline Haggerty argued the cause and filed the brief for cross-respondent Jefferson County.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge.*

BREWER, C. J.

___

* Landau, J., *vice* Richardson, S. J.

## BREWER, C. J.

In 2003, Jefferson County approved a site plan for expansion and redevelopment of a lodge and cabin facility in the Camp Sherman Vacation Rental (CSVR) zone. An appeal was taken to LUBA, and LUBA remanded the case. *Friends of the Metolius v. Jefferson County*, 46 Or LUBA 509 (2004) (*Friends I*). On remand, the county again approved the site plan. An appeal was taken to LUBA, and LUBA again remanded the case to the county. *Friends of the Metolius v. Jefferson County*, 48 Or LUBA 466 (2005) (*Friends II*). Petitioners and cross-petitioners seek review of LUBA's order in *Friends II*.[1]

On review, the Joneses contend that LUBA should have deferred to the county's interpretation of its ordinances—that is, the county's determination that tourist rental cabins could be owner occupied for 120 days each year and its determination that total buildable space includes covered decks and porches but not some uncovered decks. Relatedly, cross-petitioners contend that, because the proposed structures satisfy the definition of "single family dwellings," they are subject to code standards that are more stringent than the standards governing tourist rental cabins. We reject without further discussion the Joneses' assignment of error concerning LUBA's remand of the county's determination that total buildable space includes covered decks and porches

---

[1] Petitioners - cross-respondents, Gordon and Jeffrey Jones, were parties before LUBA and are the owners of the property that is the subject of the application. For those reasons, they have statutory and constitutional standing. The county is a cross-respondent. Although the county also filed a petition for judicial review, we dismissed the judicial review for lack of jurisdiction because the county did not timely serve the petition on respondents. In its answering brief, the county responded to the assignments of error of both petitioners and cross-petitioners. For clarity, we refer to petitioners - cross-respondents as "the Joneses."

Respondents - cross-petitioners are William Johnson, Tomas Ryan, and Friends of the Metolius. Because Johnson and Ryan were parties before LUBA and have interests in nearby property and because their use and enjoyment of that property will be affected by the county's decision, they have statutory and constitutional standing as cross-petitioners. For that reason, and because Johnson and Friends of the Metolius make the same arguments on review, we do not need to consider whether Friends of the Metolius has standing. *See Barton v. City of Lebanon*, 193 Or App 114, 118, 88 P3d 323 (2004). In this opinion, we refer collectively to Johnson and Ryan as "respondents" without attributing any particular argument to one of them.

but not some uncovered decks. We write only to discuss LUBA's remand of the county's determination that tourist rental cabins could be owner occupied for 120 days per year. For the reasons that we will explain, we affirm.

As did LUBA, we take the facts concerning the subject property and the history of the county's initial decision from *Friends I*:

"The subject property is developed with an existing lodge and 16 cabins under one ownership. The lodge and cabins are located near Lake Creek, which bisects the property from east to west. Subject to siting standards, the CSVR zone allows (1) single family dwellings, (2) a 'lodge complex,' (3) 'tourist rental cabins,'[2] and (4) 'accessory recreational facilities.' Jefferson County Zoning Ordinance (JCZO) 342(A). The minimum lot size for all permitted uses in the CSVR zone is five acres. JCZO 342(E). Tourist rental cabins are subject to maximum lot coverage standards limiting tourist rental cabins to two units per developable acre. JCZO 342(F)(2).

"In 2003, the owners of the subject property applied for site plan approval to renovate the existing lodge and cabins, and to construct an additional 23 'tourist rental cabins.' The new cabins would be 1,350-square foot detached dwellings with three bedrooms, three bathrooms, a kitchen, and a covered porch. In addition, the applicant sought approval of a meeting hall with a staff apartment, two parking areas, a recreation building, rest rooms, a picnic shelter, lawn area, hiking paths, future drain field and waste-water facilities. The applicant proposed that the 16 existing and 23 additional cabins be sold as condominiums, while the land underlying the dwellings would be owned by the condominium homeowners' association. Under the proposed condominium declarations, no unit owner may occupy the unit as a permanent residence, or for more than 90 consecutive days. In addition, the condominium declaration required

[2] Jefferson County Zoning Ordinance 105 defines "tourist rental cabins" as follows:

"A building or series of buildings on parcel of land under one ownership, having one or more rooms, with cooking facilities in each unit, that shall be made available for rental to tourists by the night or week. Designed to be rented out to tourists by the night or week."

LUBA considered that definition in *Friends I*, and the language of the definition was not amended between the time that LUBA decided *Friends I* and *Friends II*.

that each unit owner make the unit available for rent for a minimum of 180 days per year. One hundred twenty of those 180 days must occur in the winter, spring and fall months, and 60 days of those days must occur during the summer months. Finally, the declaration prohibits rental periods of longer than 30 consecutive days."

46 Or LUBA at 511-12 (footnotes omitted). The county approved that plan.

In the order that is the subject of this judicial review—that is, the order in *Friends II*—LUBA described its decision on appeal in *Friends I* and the county's actions on remand:

"The princip[al] issue on appeal [in *Friends I*] was whether the proposed cabins, conditioned to allow up to 185 days of owner occupancy per year, were 'tourist rental cabins,' as the county found, or 'single-family dwellings,' which under the county code are subject to more stringent standards, including a one dwelling unit per five acre density standard. After reviewing several LUBA and Court of Appeals opinions regarding a similar superseded county provision for 'traveler's accommodations,' and the legislative history of the current code provision for 'tourist rental cabins,' we held that the county erred in interpreting its code to allow more than *de minimis* residential use of the cabins by the owner-occupants. Such use, we held, is incompatible with the status of the cabins as 'tourist rental cabins.' [*Friends I*, 46 Or LUBA] at 519-20. We rejected all other assignments of error, except for a subassignment of error regarding whether covered porches and decks must be included in calculating the total 'buildable space,' for purposes of a code provision limiting buildable space for tourist rental cabins to 2,800 square feet per acre.

"On remand, the county board of commissioners held a public hearing limited to the two remand issues. During the hearing, the county board rejected evidence submitted by opponents as being outside the scope of remand. However, the county allowed the applicants, [the Joneses], to propose modifications to the approved site plan and proposal, and allowed [the Joneses] to submit additional evidence with respect to those modifications. With respect to the issue of whether the proposed cabins qualified as 'tourist rental cabins,' the board of commissioners imposed a condition requiring that the cabins be available for tourist rentals at

least 245 days per year, allowing up to 120 days of owner-occupancy, and found that the cabins, so conditioned, were 'tourist rental cabins.' With respect to the issue of 'buildable space,' the board of commissioners found that all covered decks and porches must be included in calculating buildable space, but not some uncovered decks. The board of commissioners approved the site plan, as modified[.]'"

*Friends II*, 48 Or LUBA at 469-71 (footnotes omitted).

Once again, LUBA remanded the case to the county. Specifically, LUBA remanded the county's determination that tourist rental cabins could be owner occupied for 120 days each year because it had already determined in *Friends I* that only *de minimis* owner occupancy is consistent with the county's ordinance and no one argued that the 120-day limit was *de minimis*. Because LUBA remanded the case on that ground, there was no need for LUBA to determine whether the proposed structures were also single family dwellings that were governed by more stringent regulations.

On review, the Joneses assert that, consistently with the county's ordinance, the county determined that tourist rental cabins could be owner occupied for 120 days each year and that LUBA should have deferred to that interpretation. Although the Joneses acknowledge that, in *Friends I*, LUBA addressed the extent to which tourist rental cabins may be owner occupied, they assert that LUBA held only that the county needed to interpret the term "tourist rental cabins" and determine how many days of owner occupancy should be allowed.[3] According to the Joneses, the county complied with that direction on remand and, on appeal, LUBA erred in

---

[3] Similarly, in its answering brief, the county asserts that it did not understand that LUBA concluded in *Friends I* that only *de minimis* owner occupancy of tourist rental cabins was consistent with the county's ordinance. Specifically, the county explains:

"In *Friends [I]*, LUBA did not reverse the County's decision, or specifically define a maximum amount of owner use that would be permitted, but stated that: 'some' owner use was permitted; 36 days annually was acceptable; but 185 days was not. Since the county's decision was not reversed, and LUBA did not establish a clear maximum owner usage, the County understood that it was to make a decision based on new findings that justified annual owner usage within the range noted above, and prevented the use of tourist rental cabins as single family dwellings."

determining that only *de minimis* owner occupancy is consistent with the county's ordinance. Specifically, the Joneses assert that *de minimis* owner occupancy is not a standard that is reflected in the language of the ordinance and that LUBA improperly relied on the *"Metolius* cases" to support its conclusion.[4] The Joneses contend that the definition of "traveler's accommodation" that was at issue in the *Metolius* cases is different from the definition of "tourist rental cabins" that is at issue in this case. In sum, the gravamen of the Joneses' position on review is that LUBA's legal conclusion in *Friends I* was incorrect.

Respondents argue that, on judicial review of LUBA's order in *Friends II*, the Joneses cannot challenge LUBA's legal determination in *Friends I*. According to respondents, although LUBA again addressed the merits of the Joneses' challenge, it concluded that (1) it had resolved the owner-occupancy issue in *Friends I* and (2) the county did not contend that the 120-day owner-occupancy limit was *de minimis*. Citing *Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992), respondents assert that LUBA effectively determined that "issue preclusion" prevented review of that legal issue in *Friends II*.[5]

_____

[4] The reference to the *"Metolius* cases" is a reference to a case in which LUBA and this court determined that, based on the definition of "traveler's accommodations" in the county's ordinance, the county's interpretation of that definition to allow up to 36 days of owner occupancy was not clearly contrary to the local ordinance. *See Friends of the Metolius v. Jefferson County*, 25 Or LUBA 411, *aff'd*, 123 Or App 256, 860 P2d 278, *adh'd to on recons*, 125 Or App 122, 866 P2d 463 (1993), *rev den*, 318 Or 582 (1994). Although the Joneses' arguments focus on the fact that the county zoning ordinance at issue in the *Metolius* cases is *different* from the zoning ordinance that is at issue in *Friends I* and *Friends II*, that fact is not pertinent to our analysis. As we will explain in greater detail, the issue in this case is whether, in *Friends I*, LUBA decided the legal issue that the Joneses currently are seeking to litigate in *Friends II*. The pertinent facts for the purposes of our analysis are that LUBA considered the new zoning ordinance in *Friends I* and that the language of that definition was not amended between LUBA's decision in *Friends I* and its decision in *Friends II*.

[5] Although respondents assert that issue preclusion applies in this context, for the same reasons that this court explained in *Beck v. City of Tillamook*, 105 Or App 276, 278-79, 805 P2d 144 (1991), *aff'd in part and rev'd in part*, 313 Or 148, 831 P2d 678 (1992), respondents' contention more properly implicates our scope of review:

"There is no issue of *res judicata* here: There is only one 'case,' which has been the subject of two LUBA appeals. More fundamentally, the question is not one of preclusion, but one of reviewability. Petitioners could have sought judicial review of LUBA's first decision, but did not. The issue now is whether we have

We agree with respondents that the propriety of the county's determination concerning owner occupancy is not within our scope of review of LUBA's decision in *Friends II*. That conclusion follows from the Supreme Court's decision in *Beck*, in which the court held that, based on the pertinent statutes, a party must seek judicial review of legal issues resolved in a LUBA order even if LUBA remands the case to the local decision-maker. The Supreme Court explained that its holding was supported by the principles of judicial economy:

> "Petitioners present various reasons why they believe that a requirement to seek judicial review from a final order remanding one or more issues to the local body, rather than saving such issues for a later petition for judicial review after completion of the remand, is poor policy. Primarily petitioners contend that judicial economy is ill served. There are two answers to petitioners' argument. The first is that judicial economy is not necessarily advanced by the procedural choice that petitioners urge. For example, in this case, one of petitioners' legal arguments is that the shelter is not a 'public facility' for which a conditional use permit could be issued at all. Had petitioners sought judicial review in *Beck I* and prevailed, the case would have ended there, saving time and expense. The second answer is that the statutes contemplate the procedure that petitioners challenge; the legislature already has weighed the competing policies and chosen one that defeats petitioners' position."

*Beck*, 313 Or at 154.

As pertinent to this case, LUBA explained in its order in *Friends II* that it had concluded in *Friends I* that only *de minimis* occupancy is consistent with the county's ordinance and that the county was not asserting that its 120-day limit was *de minimis*. Specifically, LUBA concluded:

authority to consider any errors that LUBA may have made in the first proceeding, not simply whether the city has a *res judicata* defense against the assertion of those errors. Much of the parties' analysis is couched in terms of *res judicata*. We will address their contentions without regard for the label, but our focus must be on reviewability."

(Citations omitted.)

"On remand, as noted, the county reapproved the application based on conditions limiting continuous days of owner occupancy to 30 days per quarter, for a total of 120 days per year. * * * However, the county made no attempt to demonstrate that 120 days of owner occupancy is *de·minimis*. Instead, the county essentially disagreed with our analysis in *Friends I*.[6] It also disagreed with our understanding of the *Metolius* cases and our scope of review. While the county is certainly entitled to its opinion on those points, if the county believed our *Friends I* decision was in error the most direct means to correct such errors as applied to [the Joneses'] application was to appeal our decision to the Court of Appeals, which the county did not do. That point aside, we are not persuaded by the county's decision or the respondents' arguments in this appeal that our analysis in *Friends I*, our understanding of the *Metolius* cases, or our understanding of the scope of review was erroneous. We adhere to our reasoning and holding in *Friends I*: given the significant regulatory distinctions between 'single family dwellings' and 'tourist rental cabins' in the CSVR zone, and our understanding of the *Metolius* cases, the proposed uses may be approved under the less stringent regulations governing 'tourist rental cabins' only if their use for something other than 'tourist rental cabins' is *de minimis*.

"As noted, the county's decision makes no attempt to demonstrate that reserving use of the proposed cabins for 120 days per year for owner-occupancy is *de minimis*, consistent with their status as 'tourist rental cabins.' The respondents' briefs do not argue that it is, and we do not see that it is. In the *Metolius* cases, the county interpreted its

---

[6] In support of LUBA's assertion that, on remand, the county did not apply the legal standard that LUBA had articulated in *Friends I* but instead essentially rejected that legal standard, LUBA quoted the·following findings made by the county:

" 'To the extent that LUBA's decision states that more than 36 days of owner use annually ["*de minimis*" use] is inconsistent with the express language of the ordinance [LUBA Opinion #2003-186, page 10, lines 17-20], we specifically reject such a finding as inconsistent with the express language of the Zoning Ordinance, the context in which the CSVR zone was adopted and acknowledged, and the underlying policy which includes economic development in the CSVR zone. As stated above, we find the Lake Creek Lodge condominium proposal to be a very creative and economically viable way of operating and expanding an existing and historic facility which is permitted in the CSVR zone. All concerns raised about potential future conversions to single family dwellings are effectively dealt with in conditions of approval.' "

*Friends II*, 48 Or LUBA at 476 n 8 (brackets in original).

code to conclude that a *de minimis* amount (36 days per year) of owner-occupancy is consistent with 'travelers' accommodation,' and LUBA and the Court of Appeals affirmed that interpretation. While the county is not necessarily bound to impose a similar 36-day limitation in the present case, for the reasons explained above and in *Friends I* it can approve the proposed dwellings as 'tourist rental cabins' only if it limits owner-occupancy of the cabins to a level that can be accurately described as *de minimis*."

*Friends II*, 48 Or LUBA at 476-78 (footnotes omitted).

Although the Joneses and the county appear to assert that, in *Friends II*, LUBA decided the issue of owner occupancy on its merits, we disagree. LUBA's statements concerning the merits of the owner-occupancy issue merely reflect LUBA's adherence to its decision in *Friends I*. We agree with LUBA that, in *Friends I*, it had already determined that owner occupancy must be *de minimis*. The county could have sought judicial review of LUBA's order in *Friends I* to the extent that it believed that LUBA's resolution of that legal issue was in error, but it did not. Although the Joneses were not parties in *Friends I*, they became the applicants and owners of the subject property before the county's initial decision—that is, the decision that led to the appeal in *Friends I*—and participated in the local proceedings concerning that decision.[7] It is insignificant that the Joneses were not parties in *Friends I*, because they could have participated in *Friends I* and then could have challenged LUBA's legal conclusion concerning *de minimis* owner occupancy. The Joneses did not do that, however. *See Beck*, 313 Or at 153 n 2 (reasoning that, even though the individuals who brought the first appeal to LUBA were not the same individuals who brought the second appeal, that difference was insignificant where the additional parties received notice and had the opportunity to participate in the first appeal but did not).

Because LUBA had already decided in *Friends I* that only *de minimis* owner occupancy was consistent with the county's ordinance and no one sought review of that legal

---

[7] The application originally was filed by Lake Creek Lodge, Inc., by its then president, Margaret Lumpkin. We understand that, before the county made its initial decision, the Joneses had purchased the property that was subject to the application.

determination in this court, the remaining issue for the county on remand was to determine the number of days of owner occupancy that would satisfy the *de minimis* standard. As we have already indicated, the county did not make that determination. As LUBA noted, in *Friends II,* the Joneses and the county did not assert that the 120-day owner-occupancy limit is *de minimis.* Similarly, the Joneses and the county do not make that argument on review. Instead, they assert that *de minimis* owner occupancy is not the correct legal standard.[8]

In sum, because LUBA had already determined in *Friends I* that only *de minimis* owner occupancy of tourist rental cabins was consistent with the county's ordinance and because review of that issue was not sought in this court, that legal issue is not within our scope of review of LUBA's order in *Friends II* and, accordingly, we affirm LUBA's order. In light of that determination, there is no need for us to consider the assignment of error in the cross-petitions about whether the proposed structures satisfy the definition of single family dwellings and are subject to code standards that are more stringent than the standards governing tourist rental cabins.

Affirmed on petition; cross-petitions dismissed as moot.

---

[8] Even if the Joneses could raise the issue whether only *de minimis* owner occupancy is consistent with the county's ordinance, we would agree with LUBA. *See Church v. Grant County,* 187 Or App 518, 524, 69 P3d 759 (2003) (" 'LUBA is to affirm the county's interpretation of its own ordinance unless LUBA determines that the county's interpretation is inconsistent with express language of the ordinance or its apparent purpose or policy.' " (Quoting *Clark v. Jackson County,* 313 Or 508, 836 P2d 710 (1992).). Significantly, tourist rental cabins, by definition, "shall be made available for rental to tourists by the night or week." A dwelling that is occupied by the owner who is not a renter is not available for rental to tourists by the night or week as required by the express language of the ordinance. The parties have not cited any provision in the county code, the condominium association bylaws, or in the proposed "Rental Pool and Management Agreement" that demonstrates that an owner is to be treated as a renter when occupying his or her cabin. Instead, the proposed management agreement provides, in part:

"During a Personal Use Period, an Owner shall not pay a room rental charge or a room rental tax, but, to the extent not covered by Association assessments, such Owner shall be required to pay any Lodge food or beverage charges as well as typical room cleaning and linen expenses for the duration of such Personal Use Period."

For those reasons, only *de minimis* owner occupancy is consistent with the express language of the ordinance because *de minimis* use in this context is a use that is "so insignificant that a court may overlook it in deciding an issue or case." *Black's Law Dictionary* 464 (8th ed 2004).