Argued and submitted November 13, affirmed December 16, 1992

GOOSE HOLLOW FOOTHILLS LEAGUE,
Jerald M. Powell, David Pennington
and Keith Lutz,
*Respondents,*

*v.*

CITY OF PORTLAND,
*Respondent below,*
*and*

Charles KAADY,
*Petitioner.*

(LUBA 92-087; CA A76884)

843 P2d 992

David J. Sweeney, Portland, argued the cause for petitioner. On the brief were Raymond M. Rask, Jonathan R. Gilbert and Brownstein, Rask, Sweeney, Kerr, Grim & DeSylvia, Portland.

Daniel Kearns, Portland, argued the cause for respondents. With him on the brief were Edward J. Sullivan and Preston Thorgrimson Shidler Gates & Ellis, Portland.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner purchased property in the Goose Hollow area of Portland on which he plans to operate a car wash facility. In the course of his discussions with city planning personnel, they perceived a possible conflict among potentially applicable provisions of the city code and instituted a "clarification" proceeding to resolve it. The hearings officer interpreted the provisions in a manner that was compatible with allowing the facility. Respondent[1] Goose Hollow Foothills League (League) sought review by the city council, which affirmed the hearings officer's decision. Respondents appealed to LUBA, which reversed the city's decision, and petitioner now seeks our review.

■ Petitioner's first three assignments take issue with LUBA's conclusion that respondents League, Powell and Lutz had standing to appear before LUBA.[2] It is undisputed that Powell and Lutz appeared in the local proceedings and filed a timely appeal to LUBA. ORS 197.830(2). Petitioner reasons, however, that League did not appear before the hearings officer. Therefore, *it* lacked standing to appear before the city council or to appeal to LUBA from the council's decision. Although Powell and Lutz appeared in the city proceedings, petitioner's argument continues, they did not seek the council's review of the hearings officer's decision independently of League. Therefore, petitioner maintains, they did not exhaust their local remedies, ORS 197.825(2)(a), and, because League could not seek review by the council, *no party* exhausted available remedies. Therefore, notwithstanding their appearances, Powell and Lutz had no right to appeal to LUBA and no standing before it.

Respondents answer, correctly, that petitioner's argument confuses standing before the city council with standing before LUBA. Although the premise of petitioner's argument may be that the city council proceeding should have been dismissed, he does not make an assignment of error that calls for that relief; rather, his assignments are cast in terms of whether the various respondents could and did make the

---

[1] We refer to the parties as they are designated in this court.

[2] LUBA held that respondent Pennington did not have standing, and that holding is not challenged.

requisite appearance in the city proceedings to confer standing on them to invoke LUBA's jurisdiction. The necessary hearings were held, and Powell and Lutz made the necessary appearances. Therefore, they had standing before LUBA and the right to seek its review. Because the various respondents' arguments do not differ from one another's, it is unnecessary for us to decide whether the League also has standing. *Thunderbird Motel v. City of Portland*, 40 Or App 697, 596 P2d 994, *rev den* 287 Or 409 (1979). We turn to the merits.

■ The "base zone" of petitioner's property is central commercial (CX). The parties and LUBA appear to agree that a car wash facility is a "quick vehicle servicing use" and a "drive-through facility." They also agree that, as defined in the code, all quick vehicle servicing uses include drive-through facilities. However, in respects that are not directly material here, drive-through facilities can also be associated with activities other than quick vehicle servicing uses. Section 33.130.260(C), a base zoning provision for the CX zone, provides that "Drive-Through Facilities are allowed in the CX zone, but are prohibited in certain subdistricts of the Central City Plan District." Section 33.500.040 provides that, in the event of conflict between plan district regulations and base zone regulations, the former prevail.

Petitioner's property is subject to the regulations for the Central City Plan District, which includes both the downtown and the Goose Hollow subdistricts. The property is in the Goose Hollow subdistrict but not the downtown subdistrict. Two provisions of the plan district regulations are relevant. Section 33.510.100(A)(1) provides that, in CX zones within the plan district,

"Quick Vehicle Servicing uses are prohibited in the Downtown subdistrict or within 100 feet of a light rail street."

Section 33.510.240 provides:

"Drive-through facilities are prohibited in the Downtown and Goose Hollow subdistricts, and on sites within 100 feet of a light rail street."

We quote at length from LUBA's analysis of the city's interpretation and its reasons for rejecting that interpretation:

"[T]he city finds an implied authorization for Quick Vehicle Servicing uses in the Goose Hollow subdistrict, because [Portland City Code (PCC)] 33.510.100(A) only prohibits such uses in the Downtown subdistrict. Specifically, the [city's] decision states as follows:

" 'Under [PCC] 33.510.100(A)(1), quick vehicle servicing uses are prohibited in the downtown subdistrict or within 100 feet of a light rail street. This provision does not explicitly state that quick vehicle servicing uses are allowed in all other subdistricts, but it is a reasonable implication. * * *'

"The city then reasons that this implied authorization conflicts with the prohibition against Drive-Through Facilities in the Goose Hollow subdistrict, since by definition all Quick Service Uses must include a Drive-Through Facility. To avoid this alleged conflict, the city construes the prohibition in PCC 33.510.240 as not applying to those Drive-Through Facilities associated with Quick Vehicle Servicing uses. In other words the city reads an exception into the apparently absolute prohibition against Drive-Through Facilities in PCC 33.510.240. That exception allows Drive-Through Facilities in the Goose Hollow subdistrict, so long as the Drive-Through Facility is in conjunction with a Quick Vehicle Servicing use.

"The challenged decision and [the city's and petitioner's] briefs cite numerous cases holding that statutes and local government enactments should be construed as a whole to give effect to all parts. * * *

"The erroneous assumption upon which the city's decision is based is that PCC 33.510.100(A) impliedly authorizes Quick Vehicle Servicing uses in the Goose Hollow subdistrict. The PCC explains that the base zones, such as the CX zone, 'state which uses are allowed in each zone.' The PCC goes on to explain that other PCC provisions, including the Central City Plan District, impose additional requirements and limitations on uses that are otherwise allowable under the base zone. The Central City Plan District provisions 'are applied in conjunction with the base zone and modify the regulations of the base zone.'

"Therefore, it is the CX zone that allows Quick Vehicle Servicing and Drive-Through Facilities in the CX zone. No implied authorization for Quick Vehicle Servicing uses is needed from PCC 33.510.100(A), and none is provided. That section of the PCC simply prohibits Quick Vehicle Servicing

uses in the Downtown subdistrict and within 100 feet of a light rail line. It has no effect on the uses that are allowed within the CX zone in the Goose Hollow subdistrict, because by its terms it has no applicability within that subdistrict.

"The city's decision is founded on a perceived conflict between the prohibition in PCC 33.510.240 against Drive-Through Facilities in the Downtown and Goose Hollow subdistricts, on the one hand, and its interpretation of the prohibition against Quick Vehicle Servicing uses in the Downtown subdistrict. We fail to see the conflict. The city interprets PCC 33.510.100(A) to impliedly authorize Quick Vehicle Servicing uses in the Goose Hollow subdistrict, creating a 'conflict' where none exists, and then uses that 'conflict' to create an exception to the prohibition of PCC 33.510.240 where, again, none exists. The general interpretive principle that effect should be given to all parts of an enactment, if possible, does not provide a justification for creating an implied authorization in PCC 33.510.100(A) that is not stated in that section and then using that implied authorization to create an exception to the prohibition in PCC 33.510.240 that is also not stated in the code language. Because the city's interpretation is inconsistent with the express language of the PCC, the Oregon Supreme Court's recent decision in *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992) does not require that we defer to the city's interpretation.

"Rather than engage in such interpretational gymnastics, the PCC should simply be applied as it is written. The most that can be said is that the prohibition against Drive-Through Facilities in the Downtown subdistrict stated in PCC 33.510.240 makes the prohibition against the less inclusive Quick Vehicle Servicing uses in the Downtown subdistrict stated in PCC 33.510.100(A)(a) unnecessary, because such uses would include Drive-Through Facilities and thus be prohibited by PCC 33.510.240 in any event. However, we do not agree with the city that the existence of overlapping prohibitions necessarily constitutes a conflict in the PCC which justifies going to the lengths the city went in this case to give some effect to all its code language. There are limits to the lengths the city may go to prevent overlapping code prohibitions from rendering one of those prohibitions duplicative, and the city's decision in this case goes well beyond those limits. Nothing cited by any party to this proceeding even remotely suggests any specific intent to exclude Quick Vehicle Servicing uses from the unqualified

prohibition stated in PCC 33.510.240 against Drive-Through Facilities in the Goose Hollow subdistrict." (Footnotes and citations omitted.)

Petitioner assigns error to LUBA's interpretation of the city provisions and to its rejection of the city's interpretation. We note initially that, had this case come to us before the Supreme Court's decision in *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), our analysis and affirmance would have been simple. If LUBA's and the city's interpretations were weighed on an even scale, the balance would be decisively in favor of LUBA's. The city's understanding — that one provision of an ordinance authorizes by silence what another applicable provision expressly prohibits — is little, if at all, short of absurd. Under *Clark*, however, the answer is not easy. *Clark* holds that LUBA may reject the city's interpretation of its own legislation only if the interpretation is contrary to the legislation's express language or apparent purpose or policy, considering the whole context. 313 Or at 515.

Here, LUBA concluded that the city's interpretation was inconsistent with the express language of the legislation. Like most local governments, however, the city has an abundance of land use provisions that contain an abundance of express language. By the city's lights, its endeavor was to reconcile separate provisions rather than to apply the clear express language of any one of them. However, for reconciliation to be necessary (or permissible), the city had to be correct in its premise that the provisions were in conflict, or at least could be reasonably read in combination to say something contrary to what any of them said in isolation. Had that premise been right, it is doubtful that *Clark* would permit LUBA or us to alter the city's resolution of the conflict that it perceived. Moreover, the question under *Clark* for LUBA and us, as to both the city's determination that the provisions were in conflict and of how to reconcile them, is not whether the city was "right" but whether it was clearly wrong. *See West v. Clackamas County*, 116 Or App 89, 840 P2d 1354 (1992).

We conclude that the city's determination that a conflict existed was indisputably wrong. The unqualified language prohibiting a use in the downtown subdistrict cannot

be read to allow the use in all other subdistricts within the plan district. No principle of interpretation exists under which a legislative provision that clearly identifies what it *does* regulate needs also to set forth a list of what it does *not* regulate. Moreover, the meaning is made unmistakable here by the fact that another provision in the same body of legislation expressly prohibits the same or a necessarily overlapping use in the Goose Hollow subdistrict that the first provision prohibits in the downtown subdistrict. Stated summarily, the conflict identified by the city is not to be found in its legislation, but was the product of its interpretation. Because the language of the legislation is clear and unambiguous, no interpretation was required or permissible. We agree with LUBA that the city's task was to apply its provisions as written.

LUBA also suggested that the city's interpretation of the legislation departed so profoundly from its text as to constitute, in practical effect, an amendment of the legislation. The Supreme Court and we have often emphasized that, to amend legislation *de facto* or to subvert its meaning in the guise of interpreting it, is not a permissible exercise. *See 1000 Friends of Oregon v. Wasco County Court*, 299 Or 344, 703 P2d 207 (1985); *West Hills & Island Neighbors v. Multnomah Co.*, 68 Or App 782, 683 P2d 1032, *rev den* 298 Or 150 (1984). *Clark v. Jackson County, supra*, does not *quite* enable the city to succeed in that exercise in this case. *See Cope v. City of Cannon Beach*, 115 Or App 11, 836 P2d 775 (1992).

Affirmed.