Argued and submitted May 6, affirmed on petition and on cross-petition
June 22, Zippel's petition for review and Biencourt Trust's petition for review denied
October 18, 1994 (320 Or 272)

Conroy ZIPPEL,
Jim Ward and Brouck Haynes,
*Petitioners - Cross-Respondents,*

*v.*

JOSEPHINE COUNTY,
*Respondent,*

*and*

YVONNE B. BIENCOURT TRUST,
*Respondent - Cross-Petitioner.*

(LUBA 93-172, 93-192; CA A83525)

876 P2d 854

Bill Kloos argued the cause for petitioners - cross-respondents. With him on the briefs was Johnson & Kloos.

Timothy J. Sercombe argued the cause for respondent - cross-petitioner. With him on the brief was Preston Gates & Ellis.

No appearance for respondent Josephine County.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioners seek review and respondent Yvonne B. Biencourt Trust (respondent) cross-petitions from LUBA's remand of Josephine County's allowance of respondent's application for a conditional use permit to remove and crush rock and to operate an asphalt batching plant. The operations will take place in part in a commercial forestry zone and in part in an exclusive farm use zone. Petitioners assign error to LUBA's adverse rulings on some of their challenges to the county's decision. Respondent assigns error to LUBA's reaching the merits of and its adverse ruling on the issue that led it to remand. We affirm.

■ In their first assignment, petitioners contend that LUBA erred in sustaining the county's interpretation of the provision in its zoning ordinance:

"No cement or asphalt batching plant shall operate for a period greater than 180 days at a single site."

The county's order notes that "asphalt batching uses are periodic." It proceeds to interpret the provision as proscribing "a continual period" of operations that exceeds 180 days, but allowing the resumption of batching operations at a site that has been used for 180 days, if "a significant period of time" elapses between the episodes of active operation. The county went on to define "significant period of time" as meaning "at least 90 days."

Petitioners argued to LUBA and argue here that the county's interpretation is contrary to the express language of the ordinance and is reversible under ORS 197.829(1) and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). According to petitioners, the ordinance can only be read as meaning that the 180-day limit is absolute, and does not permit a resumption of operations once a site has been used for 180 days. Petitioners conclude that the county's interpretation, allowing "a perpetual use in 180-day increments," is inconsistent with the express language of the ordinance.

LUBA disagreed with petitioners, and explained:

"[W]e cannot say the challenged interpretation is 'clearly wrong.' The code states the asphalt batching plant may not 'operate for a *period* greater than 180 days at a single site.'

(Emphasis added.) If the county wishes to construe [the provision] as not imposing a limit on the number of periods of operation of up to 180 days that may occur at a single site, provided they are interrupted by substantial periods of inactivity, we see nothing in the language of [the provision] that is inconsistent with that interpretation. *See Langford v. City of Eugene*, 126 Or App 52, 57-58, [865 P2d 535, *rev den* 318 Or 478] (1994).

> "We do not mean to suggest we would interpret [the provision] in the manner the county has, if we were required to do so. In particular, the code language offers no support for establishing 90 days as the minimum length of interruption between periods of operation required by [the provision]. We can see some practical problems with applying the interpretation of [the provision] adopted by the county, although the parties do not discuss the workability of the county's interpretation of [the provision] in different factual contexts. However, in view of our limited scope of review under ORS 197.829 and *Clark* and its progeny, we defer to the county's interpretation."

We emphasize again, as we have on several occasions since the Supreme Court's decision in *Clark*, that the question for LUBA and us is not what the local legislation in fact means, but whether the local government's interpretation of it is so wrong as to be beyond colorable defense. ORS 197.829(1) codifies the part of *Clark* pertaining to LUBA's and our review of local interpretations for "inconsisten[cy] with the express language" of local legislation.[1] In this case, we agree with LUBA that the county's interpretation is not reversible under ORS 197.829(1).

The ordinance proscribes operations for a period greater than 180 days. It does not state whether the operations may occur for one period or for many. However, when the context of the legislation is considered, we cannot say the county's interpretation is clearly wrong. The county explained:

> "The meaning of this criterion is not clear. We do not interpret the criterion to limit the amount of batching that can be processed at any one site to that which can be processed during 180 days. Such an interpretation effectively limits the resource value of any aggregate site. (Note that this criterion applies as

---

[1] The other subsections of the statute are not germane to our review in this case.

well to aggregate uses allowed outright in the Aggregate zoning district.) No purpose would be served by such an arbitrary interpretation.

"Asphalt batching uses are periodic. We interpret the criterion to limit operations to any continual period of 180 days at a single site. By 'continual period' we mean the period of operations with only short interruptions in time. Once this period is exceeded batching operations could not resume without passage of a significant period of time. A significant period of time would be several months (at least 90 days)."

Although we might not interpret the ordinance as the county has, we cannot reverse its interpretation.

LUBA questioned whether the 90-day inactivity requirement between intervals of operations that the county read into the ordinance can be traced to its language. Be that as it may, that does not affect the aspect of the interpretation that the 180-day limit applies to successive periods of operation, rather than being a one-time absolute limit on all operations at a single site. *Respondent* does not complain about the 90-day inactivity interpretation, and it can provide no basis for reversal under *petitioners'* argument. We reject petitioners' first assignment.

■       Their second assignment also ascribes error to the county's interpretation of a provision of its legislation and to LUBA's affirmance of the interpretation. The ordinance provision challenged in this assignment requires, as a conditional use approval requirement, that the "proposed use fully accords with all applicable standards of the County and State laws or regulations." The county construed the provision to require an applicant to demonstrate only the "general ability of the proposed use to obtain needed approvals by showing the absence of any unusual circumstances or conditions which would inhibit these approvals." If other persons raised compliance issues beyond that required showing, the county continued, "the applicant may then respond to those concerns."

Petitioners again argued that the interpretation is contrary to the express language of the ordinance and, again, LUBA disagreed. In their assignment here, petitioners argue that the county's interpretation departs from the express requirement of the ordinance that there be a showing that the proposed use fully accords with all local and state law, and the

interpretation also shifts the burden from the applicant to the opponents on compliance issues.

Again, our limited task is to determine whether the interpretation is clearly wrong, and it is not. The county's interpretation essentially establishes a rule of procedure for proving compliance with the criteria incorporated into the ordinance provision, and does not directly address the substance of the criteria. The county explained in its order that it was rejecting a laundry list approach, that would require permits to be issued or compliance to be established before-the-fact for "every potential agency approval." The county's interpretation establishes a mechanism by which compliance with the substantive criteria can be established and challenged, and we cannot say that, as an interpretation *of the ordinance provision*, it is clearly wrong. We note that, whether a proposed use *satisfies the state and local requirements* that the ordinance incorporates is a different question from the one we have answered, but is one that petitioners do not ask in their argument to us.

Petitioners' remaining assignment challenges the evidentiary support for and other aspects of certain findings by the county. To the extent the assignment requires comment, it fails to demonstrate error under *Cusma v. City of Oregon City*, 92 Or App 1, 757 P2d 433 (1988).

In its cross-petition, respondent challenges LUBA's remand for the county to make findings regarding the use of a private road in the EFU zone for access to the site of the proposed operations. LUBA concluded that the county's findings did not include an interpretation of whether the relevant provision of its zoning ordinance allowed a private access road in the zone. Therefore, citing *Gage v. City of Portland*, 123 Or App 269, 860 P2d 282, *on recon* 125 Or App 119, 866 P2d 466 (1993), *rev allowed* 318 Or 478 (1994), and *Weeks v. City of Tillamook*, 117 Or App 449, 844 P2d 814 (1992), LUBA remanded for the county to make the necessary interpretation. LUBA also remanded because the county had not made findings concerning ORS 215.296(1) and, LUBA held, "[f]indings addressing the standards of ORS 215.296(1) are required to allow an access road serving the proposed use on land zoned for exclusive farm use."

■     Respondent contends that LUBA erred in both of the grounds for its remand.[2] With respect to the first ground, we agree with LUBA that a remand for the county to interpret the ordinance is necessary. Although that is the proper disposition, we do not agree with the suggestion in LUBA's opinion that the county's interpretive exercise on remand is limited to the particular questions LUBA identified, and may not include other questions described in LUBA's opinion that pertain to the permissibility of the access road under the ordinance. On remand, the county may address all relevant questions of interpretation, subject to LUBA's eventual review under ORS 197.829.[3]

■     Respondent's argument regarding the remand for findings under ORS 215.296(1) requires more extensive comment. That statute provides:

"A use allowed under ORS 215.213(2) or 215.283(2) may be approved only where the local governing body or its designee finds that the use will not:

"(a)   Force a significant change in accepted farm or forest practices on surrounding lands devoted to farm or forest use; or

"(b)   Significantly increase the cost of accepted farm or forest practices on surrounding lands devoted to farm or forest use."

Mining of aggregate and processing into asphalt are uses allowed by ORS 215.283(2).

Respondent argues, nevertheless, that ORS 215. 296(1) is inapplicable, because ORS 215.213(2) and ORS 215.283(2) contain some provisions relating to public roads, but none pertaining to private roads. Respondent further contends:

"All of the uses permitted or conditionally allowed by ORS 215.283 pertain to physical improvements to land. They all involve 'development,' *i.e.*, a change in the appearance of land or an addition to land. Activities on land are not discussed. These statutory distinctions suggest that the exclusive farm

---

[2] It also contends, in two separate assignments, that LUBA erred by reaching the merits of the issue. We reject both assignments without discussion.

[3] We do not understand the basis of LUBA's suggestion to be that any interpretive questions are foreclosed by a failure to preserve them as required by *Beck v. City of Tillamook*, 313 Or 148, 835 P2d 678 (1992), or are precluded for other procedural reasons.

use statutes do not directly regulate the type of traffic on a private or public road.

"There are hundreds of public roads in this state whose right-of-way is on land zoned for exclusive farm use. If LUBA is correct that the type of traffic on these roads is limited by ORS 215.283 and 215.296, then state law is broken every time a city family goes for a country drive and every time an industry sends supply trucks on rural highways.

"This surely cannot be the law. It is more reasonable to construe ORS 215.283 and 215.296 to not regulate, to neither allow nor preclude, traffic on public or private roads on EFU land. Traffic should be regulated as an impact, not a separate land use. Because LUBA remanded for irrelevant findings in this regard, its decision was unlawful in substance and should be reversed." (Footnote omitted.)

The argument fails for a number of reasons, two of which we note. First, the uses that give rise to the inquiry under ORS 215.296(1) are the mining and batching operations, not the road or traffic. The road is ancillary to the uses for which respondent seeks permission, and the traffic is a potential consequence of those uses that bear on whether they will have impacts of the kind envisioned by ORS 215.296(1). In sum, although the permissibility of the road may be the immediate question, it is derivative from and integral to the question of whether particular impacts will or may accompany the uses for which respondent has applied.[4]

Second, and relatedly, the situation here is in no way analogous to the family outings to which respondent compares it. Here, the uses respondent has applied to conduct are, potentially, the source of a systematic increase in traffic volume because of the new operations for which the road is to provide access. Unlike the hypothetical city family's drive in the country, the problem that must be considered here is not simply an incidental traveler on an existing road that has no new facilities to serve. We agree with LUBA that the county must make findings responsive to ORS 215.296(1).

Affirmed on petition and on cross-petition.

---

[4] It is unnecessary for us to decide the merits of respondent's argument concerning the applicability of ORS 215.213, ORS 215.283 or ORS 215.296(1) to roads and traffic, under circumstances where their potential effects are not derivative from an application for other uses to which the statutes clearly apply.