Argued and submitted June 19, reversed and remanded July 31, 1996

## Garfield deBARDELABEN
## and Marian deBardelaben,
*Respondents,*

*v.*

## TILLAMOOK COUNTY,
*Respondent below,*

*and*

## Darryl CARTER,
*Petitioner.*

(LUBA No. 95-238; CA A93091)

922 P2d 683

Timothy J. Sercombe argued the cause and filed the brief for petitioner.

Max M. Miller, Jr., argued the cause for respondents. With him on the brief was Tonkon, Torp, Galen, Marmaduke & Booth.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioner Carter (petitioner) seeks review of LUBA's reversal of Tillamook County's allowance of a variance from a height restriction in conjunction with petitioner's construction of an addition to his house.[1] LUBA concluded that the county governing body's interpretation of the variance provisions of its land use ordinance (sometimes "LUO" in the quoted material) was reversible under ORS 197.829 and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). We reverse.

Petitioner's residence is located near the beach, and it currently has 1,600 square feet of living space. Petitioner proposes to add 2,100 square feet, evidently to make the house suitable for year-round rather than vacational or seasonal use, and to accommodate the needs of petitioner's handicapped adult son. The variance that petitioner seeks would allow a height of 22 feet, five feet over the limit in the zone. Petitioner's property differs from nearby residential properties in that the only part of it where construction of the kind and extent in question is feasible slopes away from the ocean.

The slope is among the reasons why petitioner sought the variance. As explained in his brief:

"In applying the Tillamook County height limit, the height of a building is measured from the ground. Thus, a height variance is needed to build onto the structure at the same level as the existing home, when the ground slopes away from the house."

In other words, although the height allowed by the variance will be 22 feet above the base of the slope, the entire expanded structure will continue to be at the same peak level as the existing structure. Consequently, the county found,

---

[1] The county filed an untimely petition for judicial review of LUBA's decision, and we dismissed review as to the county. We also entered an order striking the opening brief, on which the county purported to appear with petitioner, but only as to the county.

It is important to emphasize that the variance in question here pertains only to the height of the structure. The substantial expansion itself was allowed through a separate conditional use permit, which was not challenged in the LUBA appeal.

*inter alia,* that visual obstruction and various other problems commonly associated with height would not result from the granting of the variance.[2]

The first of the applicable provisions of the county land use ordinance, section 8.010, states:

"The purpose of a variance is to provide relief when a strict application of the dimensional requirements for lots or structures would cause an undue or unnecessary hardship by rendering the parcel incapable of reasonable economic use. No variance shall be granted to allow a use of property not authorized by this ordinance."

Section 8.030 provides that a variance shall be granted

"if the applicant adequately demonstrates that the proposed variance satisfies all of the following criteria:

"(1) Circumstances attributable either to the dimensional, topographic, or hazardous characteristics of a legally existing lot, or to the placement of structures thereupon, would effectively preclude the enjoyment of a substantial property right enjoyed by the majority of landowners in the vicinity, if all applicable standards were to be met. Such circumstances may not be self-created.

"(2) A variance is necessary to accommodate a use or accessory use on the parcel which can be reasonably expected to occur within the zone or vicinity.

"(3) The proposed variance will comply with the purposes of relevant development standards as enumerated in [LUO] 4.005 and will preserve the right of adjoining property owners to use and enjoy their land for legal purposes.

"(4) There are no reasonable alternatives requiring either a lesser or no variance."

The governing body of the county first concluded that the "decisional criteria" for variances were those included in section 8.030, and that, although section 8.010

---

[2] At oral argument, respondents' attorney explained that their opposition is generated principally by privacy concerns.

might be relevant "in construing the meaning" of those criteria, the provisions of section 8.010 itself are simply "aspirational" and are not approval criteria. The governing body then interpreted the phrase "reasonable economic use" in section 8.010 "to mean the highest and best use of property under its zoning and of an intensity of use consistent with other similarly situated properties."

LUBA rejected the county's interpretation of section 8.010 as "clearly wrong" and, thus, as reversible under *Clark*. *See Goose Hollow Foothills League v. City of Portland*, 117 Or App 211, 217, 843 P2d 992 (1992). LUBA's basis for that holding was that "reasonable economic use" could not properly be equated with "highest and best use" under general principles of, and case authority relating to, variance and appraisal law.

Further, although LUBA offered no direct analysis of the county's interpretation that section 8.010 does not provide approval criteria, it stated:

"The county's interpretation of LUO § 8.030 must not only be consistent with the express language of LUO § 8.030, but also with the purpose stated in LUO § 8.010."

LUBA also rejected the county's interpretation of subsections (1), (2) and (4) of section 8.030.[3] The county reasoned, *inter alia*, that the slope of the property was a topographic characteristic of the kind contemplated by subsection (1), and that the ability to have a home of 3,000 to 4,000 square feet, of the kind that other property owners in the area could construct or expand on their differently configured land, was a "substantial property right" within the meaning of the subsection that would be precluded by the property's characteristics if the variance were not allowed.

LUBA held that the county's interpretation of subsection (1) was inconsistent with *section 8.010*. It explained:

"Because [petitioner] already has a house on the subject property, the parcel is not rendered 'incapable of reasonable use without a variance.' "

---

[3] LUBA sustained the county's interpretation of section 8.030(3) against respondents' challenge.

LUBA then also rejected the county's interpretation of "substantial property right" as "unacceptably expansive." The only basis LUBA offered for that conclusion was that the situation here was distinguishable from a pre-*Clark* case in which *it* had decided that a variance was allowable under a City of Portland ordinance.

LUBA next concluded that the county's interpretation of section 8.030(2) was reversible because, in LUBA's view and contrary to the county's:

> "[E]xpansion of living space is not a 'use.' [Petitioner] presently uses the subject property for a residence, and that use will not change after the proposed expansion of living space. [Petitioner's] house can be expanded without a variance.[4] The variance is therefore not necessary under any colorable interpretation of LUO 8.0[30](2)."

Finally, LUBA held that the county's interpretation of section 8.030(4) was also reversibly erroneous. Once again, LUBA relied on general case law pertaining to variances to support its conclusion that the county wrongly considered the personal circumstances of the applicant, the purpose of the structure and the "costs or burden caused by alternatives," in determining that "there are no reasonable alternatives requiring either a lesser or no variance."

Petitioner assigns error to each ruling in which LUBA rejected the governing body's interpretations. Petitioner asserts that LUBA exceeded the permissible scope of review under *Clark* and the parts of ORS 197.829(1) that codify *Clark*. According to petitioner, the county's interpretations were neither "clearly wrong," the test for reversibility under *Clark* that we expressed in *Goose Hollow*, 117 Or App at 217, nor were they "so wrong as to be beyond colorable defense," the equivalent test that we stated in a different way in *Zippel v. Josephine County*, 128 Or App 458, 461, 876 P2d 854, *rev den* 320 Or 272 (1994).

---

[4] The statement that the expansion can occur without a variance appears to rest on the factual premise that some expansion other than the proposed one would be possible without a variance. As we observed in note 1, however, there is no issue properly here concerning the expansion itself, as distinct from the height variance. There is also no question that the approved expansion cannot be feasibly located anywhere on the property except where petitioner seeks to locate it.

■ We agree with petitioner. We reiterate that the question for LUBA under *Clark* and ORS 197.829(1)(a)-(c) is whether the county's interpretation is indefensible, not whether the interpretation is "correct" in the sense that it accords with the way that LUBA itself might construe the provisions. We conclude that none of the county's interpretations is reversible under the *Clark* standard.

■ Although LUBA did not expressly address the county's interpretation that section 8.010 does not state approval standards, it is apparent that LUBA treated the section as if it does: One of the bases for LUBA's rejection of the county's interpretation of section 8.030(1) was that, in LUBA's view, the latter interpretation did not comport with section 8.010. We reiterated in *Langford v. City of Eugene*, 126 Or App 52, 57, 867 P2d 535, *rev den* 318 Or 478 (1994), that a local governing body's interpretation of its legislation to determine "which of two or more arguably applicable approval criteria * * * applies to a particular use" can seldom be reversible under *Clark*. The same is true of local determinations concerning which local provisions are or are not approval criteria. LUBA erred by implicitly rejecting that aspect of the governing body's interpretation of section 8.010.

■ It also erred by holding that the county's interpretation of the phrase "reasonable economic use" in section 8.010 fails the *Clark* test. Although we might or might not agree with LUBA's assessment of the county's attempt to analogize that phrase to "highest and best use," if that were the county's entire interpretation, the county went on to state that "reasonable economic use" contemplates "an intensity of use consistent with other similarly situated properties." As relevant to the facts of this case, that latter part of the interpretation is independently decisive, and it is not contrary to the language, purpose or policy of the ordinance.

■ There is a further reason why LUBA erred in rejecting the county's interpretation of "reasonable economic use," and that reason is also the basic one that flaws LUBA's analysis of the interpretations of section 8.030 that it reversed. Throughout its opinion, LUBA focused largely on general principles of variance law and/or on the case law articulating those principles; it then reasoned in effect that, because the

county's interpretations of *this ordinance* establish a less restrictive standard for granting variances than is generally followed, the interpretations were clearly wrong.[5] While we do not imply that extrinsic authority dealing with analogous issues cannot be instructive to local decision makers, or to LUBA and us in reviewing local interpretations of local land use legislation, *Clark* and ORS 197.829(1) make clear that, at least where no issues of state law are involved, the principal focus in that review must be on the language, purpose and policy of the local legislation itself. Applying that methodology, we have reviewed the county's interpretations. Whether or not we would have interpreted the ordinance as the county did, its interpretations must be affirmed in each instance.

LUBA's opinion contains an able discussion of variance law, but it cannot be sustained as an application of *Clark* and its progeny. It may be that exactly the opposite is true of the county's decision in both of those respects, but the *Clark* question is the one that was before LUBA and is before us.

Reversed and remanded.[6]

---

[5] LUBA followed that approach in particular in its disposition of the county's interpretations of section 8.030(1) and (4), but less so in connection with subsection (2). Insofar as LUBA's holding regarding that subsection calls for independent analysis by us, we simply cannot agree with LUBA that the county was "clearly wrong" in treating a greatly expanded dwelling as a different "use" than the existing one, within the meaning of this ordinance.

[6] Our opinion conclusively determines that the county's interpretations of the ordinance must be sustained. We remand for LUBA to determine whether other issues, which may have been raised but not decided there, must be resolved before a final disposition can be reached. If there are no such remaining issues, the county's decision should be affirmed.