Argued and submitted September 25, affirmed November 4, 1998

# DEPARTMENT OF LAND CONSERVATION AND DEVELOPMENT,
*Respondent,*

*v.*

# TILLAMOOK COUNTY,
Ed Myers and Wilma Myers,
*Petitioners.*

(LUBA No. 97-250; CA A102836)

967 P2d 898

William K. Sargent argued the cause and filed the brief for petitioner Tillamook County, and Jeffrey L. Kleinman argued the cause and filed the brief for petitioners Ed Myers and Wilma Myers.

James R. George, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

## DEITS, C. J.

Petitioners, Tillamook County and the Myers, seek review of LUBA's remand of the county's approval of the Myers' application for a residential subdivision, consisting of six one-acre lots, in a rural residential zone.[1] We affirm.

Under section 3.010(4)(a) of the county's land use ordinance, land divisions and development in the zone are generally subject to a two-acre minimum lot size. However, section 3.010(4)(k)(5) provides that the minimum "may be as small as 20,000 square feet" if, *inter alia*, "[p]ublic or private roads providing access to the lots shall meet standards as contained in the County Land Division Ordinance." It is undisputed, at least in the arguments that the parties present to us, that the required road access does not presently exist. Nevertheless, the county governing body interpreted section 3.010(4)(k)(5)

"as being intended to address the additional traffic impacts resulting from lots of less than two acres. For example, in this case, allowing six lots rather than three on the same six acres could result in doubling the number of residences and, hence, doubling the traffic impacts upon the 'public or private roads providing access to the lots.' The Board expressly interprets this provision to state, and expressly finds herein, that compliance can be assured by limiting the number of residences to the three allowed as a matter of right, until such time as the 'public or private roads providing access to the lots shall meet standards as contained in the County Land Division Ordinance.'"

Consequently, the county concluded that the ordinance provisions could be satisfied by, and granted the application subject to, the following condition:

"26.   No building permits shall be issued for any more than three of the proposed lots herein, until that portion of Hughey Lane west of and including its intersection with Marvin Road meets the standards contained in the county

---

[1] We refer to the parties by their designations in this court. Petitioners have appeared jointly before us. This is the third time that LUBA has remanded the county's approval of the applications. *See DLCD v. Tillamook County*, 30 Or LUBA 221 (1995); *DLCD v. Tillamook County*, 33 Or LUBA 163 (1997).

Land Division Ordinance as of the date the Myers' application in the case was deemed complete."

Respondent appealed to LUBA, contending that the county's interpretation of its ordinance provisions was contrary to the express language of the provisions and, therefore, was reversible even under the deferential review standard of ORS 197.829(1)(a) and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). LUBA agreed that the county's interpretation was "clearly wrong," within the meaning of *Goose Hollow Foothills League v. City of Portland*, 117 Or App 211, 843 P2d 992 (1992), and this court's subsequent decisions that have developed and applied that test to determine if local governing body interpretations are reversible in the aftermath of *Clark*. LUBA explained:

> "As clearly set forth in the plain language of that provision, [section] 3.010(4)(k) addresses and restricts *lot* size, not the number of residences or the number of building permits issued. Any interpretation of that provision that allows the creation of lots smaller than two acres without first establishing that access roads currently meet required standards is contrary to the express language of [section] 3.010(4)(k)(5), and is, therefore, clearly wrong.
>
> "While the county's reasoning behind its 'interpretation' may be 'reasonable and rational' in the context of a legislative inquiry, this is not such an inquiry. The effect of the county's interpretation in this quasi-judicial evaluation is again, that the county has impermissibly amended its ordinance under the guise of interpretation. *Goose Hollow Foothills League v. City of Portland*, 117 Or App 211, 218[, 843 P2d 992] (1992).
>
> "Because the county's interpretation of [section] 3.010(4)(k) is clearly wrong, condition 26, which is premised on that interpretation, does not ensure compliance with that provision. Condition 26 does not restrict the creation of lots pending road improvements. It limits only the number of building permits issued pending those improvements. Limiting the number of building permits issued for already created lots is not the legal equivalent of limiting the number of lots created."

Petitioners assign error to LUBA's conclusion. They rely on numerous decisions by this court in which we have

articulated and applied the "clearly wrong" test. As we noted in *Marquam Farms Corp. v. Multnomah County,* 147 Or App 368, 379, 936 P2d 990 (1997), the test is "less than stringent" and, as *Clark* mandates, it *is* deferential. We have also emphasized that, under the test, the question is whether the local "interpretation is indefensible, not whether the interpretation is 'correct' in the sense that it accords with the way that LUBA [or we] * * * might construe" the legislation independently. *deBardelaben v. Tillamook County,* 142 Or App 319, 325, 922 P2d 683 (1996).

Nevertheless, ORS 197.829(1)(a)-(c) provide that local interpretations are reversible if they are inconsistent with the "express language," "purpose" or "underlying policy" of the interpreted provisions. We have never suggested that *no* interpretation can fail the "clearly wrong" test and, on a number of occasions, we have rejected local interpretations under the test. In *Jebousek v. City of Newport,* 155 Or App 365, 367, 963 P2d 116 (1998), for example, we held that the city's interpretation of a comprehensive plan provision as being "precatory only," rather than a mandatory approval standard, was contrary "to any reasonable reading" of the language of the provision and was clearly wrong. *See also Marquam Farms Corp.,* 147 Or App at 379-80; *Goose Hollow Foothills League.*

For the reasons stated in LUBA's opinion, the same is true here. The relevant provisions of section 3.010(4) regulate the minimum lot sizes on which land divisions or development may be permitted in the zone. The county has interpreted the provisions as allowing the approval of a subdivision proposal that does not comply with the minimum lot size requirements, as long as building permits are not issued for all of the lots until certain road development occurs which, the county hypothesizes, would eventually make development on smaller lots permissible. The interpretation is directly contrary to the minimum lot size provisions of the ordinance, which are conditions of *present* approval under it.

Petitioners contend that we should nevertheless affirm the interpretation under LUBA's opinion in *Burghardt v. City of Molalla,* 29 Or LUBA 223, *aff'd* 136 Or App

123, 899 P2d 765 (1995). Specifically, petitioners rely on the second part of LUBA's statement in *Burghardt*:

"A local government may properly grant permit approval based on either (1) a finding that an applicable approval standard is satisfied, or (2) a finding that it is feasible to satisfy an applicable approval standard and the imposition of conditions necessary to ensure that the standard will be satisfied." 29 Or LUBA at 236.

Petitioners argue by analogy that the county's interpretation here is salvaged by the prospective compliance with section 3.010(4) that condition 26 ostensibly assures.

For a number of reasons, petitioners' argument does not succeed. LUBA made the quoted statement in *Burghardt* in the course of discussing a challenge to the evidentiary support for the city's finding that a condition that it imposed on the approval of a permit guaranteed prospective compliance with an ordinance requirement pertaining to drainage systems and water runoff. There was no issue in the pertinent part of LUBA's *Burghardt* opinion about what the ordinance meant or what it required. Rather, the question was whether the applicant and the city had demonstrated that the condition of approval would achieve compliance with what the ordinance indisputably required. In other words, the statement in *Burghardt* does not pertain to a question of interpretation, and any bearing it could have on the interpretive issue in this case is inferential at best.[2]

In any event, the county's interpretation here cannot be saved by petitioners' "prospective compliance" rationale because, as LUBA's opinion here makes clear, neither the county's interpretation nor condition 26 assures eventual compliance with or even pertains to the relevant requirement. Under the clear language of section 3.010(4), the subdivision proposal that the county approved does not meet the minimum lot size requirement that it must satisfy in order to gain approval. Both the county's interpretation and approval condition 26 deal with matters entirely different from the lot size requirement: Whether building permits will be issued to

---

[2] Insofar as anything in LUBA's opinion in *Burghardt* decides matters that we have not addressed before and do not decide now, we assume its correctness *arguendo* but do not pass on its merits.

allow actual development on the presently subsize lots; and whether a road system will be developed that, if it existed now, would arguably permit lots of a lesser minimum size than the ordinance requires under the conditions that in fact exist. Petitioners' argument does not demonstrate "prospective compliance" with the approval standards of the ordinance; rather, it demonstrates that future circumstances might change, with the effect that the subdivision proposal might some day be subject to a different lot size approval standard than applies to it—and that it cannot meet—at the present time. The county's interpretation essentially reads the lot size requirement out of the ordinance and replaces it with a combination of limitations on and speculations about two other matters. The county's interpretation of the ordinance was "clearly wrong" and so was its decision to grant the subdivision application that does not meet an applicable approval standard of the ordinance.

Affirmed.