Argued and submitted August 11, affirmed October 13, 1999

Karen M. SCHWERDT,
Kristin M. Kent, Norman R. Fraser,
Rod R. Edel, Michael G. Taylor,
Andrea Taylor and Edward Epley,
*Petitioners,*

*v.*

CITY OF CORVALLIS
and Oregon State Board of Higher Education,
*Respondents.*

(LUBA No. 98-193; CA A106739)

987 P2d 1243

Bill Kloos argued the cause and filed the brief for petitioner Rod Edel.

William H. Sherlock and Hutchinson, Anderson, Cox, Coons & DuPriest, P.C., filed the brief for petitioners Karen M. Schwerdt, Kristin M. Kent, Norman R. Fraser, Michael G. Taylor, Andrea Taylor, and Edward Epley.

James K. Brewer argued the cause for respondent City of Corvallis. With him on the brief was City Attorney's Office.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent Oregon State Board of Higher Education. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

DEITS, C. J.

## DEITS, C. J.

Petitioners seek review of LUBA's decision remanding, but nevertheless rejecting most of petitioners' specific challenges to, the City of Corvallis's approval of Oregon State University's (OSU) proposal to develop a "privately owned and operated" 156-room 'hotel/conference facility with restaurant and lounge' on the OSU campus. The principal issue petitioners raised before LUBA, and raise here, is whether the city council's interpretation of its Land Development Code (LDC)[1] as allowing the facility is reversible under ORS 197.829 and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992).

In general terms, the council concluded that the proposed hotel qualifies under applicable LDC provisions as a kind of "civic" use that is permitted in the OSU district. Petitioners contend, conversely, that the use is a "commercial" one of a kind that is not permitted in the district. LUBA's opinion sets forth the following more comprehensive description of the relevant city provisions and of the city council's interpretation and application of them:

"Uses are organized under the LDC according to a three-tier hierarchy. The broadest level consists of categories of 'use types' such as Residential, Civic, Commercial, Industrial, etc. Each zoning district, including the OSU District, lists certain categories of use types. Within each category for each zoning district are listed the use types allowed in that district. A given use type may or may not specify particular uses, or examples of uses, that are described within that use type. The OSU District lists Residential, Civic and Commercial as categories of use types allowed in that district. Within the OSU District 'Civic' category are listed a number of use types, including 'University Services and Facilities.' Within the OSU District Commercial category are listed three commercial use types, none of which include hotels, conference facilities or restaurants as uses described by those use types. The LDC describes such uses as falling under 'Transient Habitation' or 'Eating and Drinking Establishment' use types, which

---

[1] LUBA's opinion sometimes uses the acronym "LDO."

are classified at LDC 3.0.30.03 as belonging to the Commercial category.

"In the challenged decision, the city considered whether the proposed use, a hotel/conference facility, must be classified within the Transient Habitation or Eating and Drinking Establishment use types, or whether it could be classified within the University Services and Facilities use type. LDO 3.0.30.02.1.b defines 'University Services and Facilities' as

" 'Services and facilities customarily associated with a major university. Typical uses include housing facilities, classrooms, research facilities, recreational amenities and parking facilities.'

"The city council interpreted LDO 3.36.30.01.b.2 as allowing use types not listed in the OSU District, as long as those uses also fall within the definition of University Services and Facilities:

" 'The City Council interprets [LDO] 3.36.30.01.b.2 as allowing certain use types specifically defined as commercial use types within the OSU District, so long as these uses also fall within the definition of University Services and Facilities, found in [LDO] Section 3.0.30.02.1. In this case, while 'Transient. Habitation' and 'Eating and Drinking Establishments' are commercial use types, the City Council finds that they are also facilities and services customarily associated with major universities. The City Council further finds that these uses will further assist in meeting the OSU mission to promote education and dissemination of research information to the broader community.' "

LUBA proceeded to reject petitioners' argument that the city's interpretation was "clearly wrong" and, hence, reversible under *Clark*. LUBA explained its agreement with the city's argument

"that nothing in the LDC prohibits uses from being classified as belonging to more than one use type, and that the city's interpretation allowing unlisted commercial uses in the OSU District as long as those uses also fall within the University Services and Facilities use type is not clearly wrong. * * * The city's determination that the proposed hotel/conference facility is customarily associated with universities and thus falls within the University Services and

Facilities use type does not violate LDC [provisions]. Those provisions prohibit establishing or changing uses allowed in a district, but do not by their terms prohibit a determination that a proposed use falls within more than one use type or category of use types."

LUBA also rejected petitioners' contentions that the city's findings were inadequate to show, and that there was a lack of substantial evidence to permit, a finding that facilities of the kind in question are "customarily associated" with major universities. In a related connection, however, LUBA concluded that the city had improperly allowed the proponents of the application to submit new evidence on the factual question after the close of the evidentiary record. LUBA noted that, under ORS 197.763, the city "could reject that evidence, or it could offer an opportunity for other persons to respond to that evidence." Since the city had done neither, LUBA remanded the city's decision apparently for the purpose of allowing opponents of the application to respond to the belated evidentiary presentation.

■ Two of petitioners' arguments to us require discussion. They assert in their first assignment of error that, having remanded on the basis of petitioners' contention that the city erred in accepting OSU's supplemental evidence "without providing petitioners an opportunity to rebut that evidence," LUBA should not have reached and rejected petitioners' challenges to the existing findings and to the substantiality of the existing evidence on the same factual issue that is to be the subject of the proceedings on remand. According to petitioners:

"Left with such a ruling, petitioners would be wasting their time trying to rebut the improperly introduced evidence given that LUBA has already ruled the city's decision, which was based in part on that evidence, is adequate."

However, the point could as well be made that, if LUBA had found the *existing* findings and evidence to be inadequate in the ways asserted by petitioners, then their time and possibly everybody else's might be wasted by requiring a remand to enable them to rebut what LUBA had already found to be inadequate. Stated differently, LUBA

arguably had to reach petitioners' contentions in order to determine whether they warranted an outright reversal rather than a remand. Moreover, ORS 197.835(11)(a) provides:

> "Whenever the findings, order and record are sufficient to allow review, and to the extent possible consistent with the time requirements of ORS 197.830(13), [LUBA] shall decide all issues presented to it when reversing or remanding a land use decision described in subsections (2) to (9) of this section or limited land use decision described in ORS 197.828 and 197.195."

*But see Hendgen v. Clackamas County*, 119 Or App 55, 58, 849 P2d 1135 (1993).

■ In any event, petitioners are incorrect in their view that LUBA's disposition of the substantive issues makes its remand purposeless. Any new material that is presented to the city in the proceedings on remand must be considered by the city, reflected in its findings if indicated, and included in the record that would be reviewable in any later appeals that may be taken. LUBA's rejection of petitioners' arguments based on the existing record does not make an empty exercise out of the further proceedings that LUBA has ordered, unless petitioners have nothing of substance to offer in those proceedings. For the above reasons, petitioners identify no reversible error in their first assignment.

In their other argument that calls for discussion, petitioners challenge the city council's interpretation of the LDC provisions as allowing the proposed facility to be classified as a civic type "university services and facilities" use.[2] There is no dispute that the proposed facility fits the LDC definition and examples of a "commercial use type." The city maintains, nevertheless, that its governing body could reasonably interpret the local ordinance in such a way that the facility *also* fits within the "civic use type." The city relies, *inter alia*, on the following language in LDC 3.0.30:

---

[2] We emphasize that we *address* only the interpretive aspect of the argument. We do not find it necessary to comment on petitioners' contentions regarding the adequacy of the findings or the sufficiency of the evidence.

"All uses are classified into *one or more* of the following use types. In order of listing in this chapter they are: Residential, Civic, Commercial, Industrial, Agricultural and Extractive." (Emphasis added.)

Conversely, petitioners urge us to reject the interpretation that the use can simultaneously come within both use type categories. They rely, *inter alia*, on the following language in LDC 3.0.30.03:

"Commercial use types include the distribution, sale and/or rental of goods and the provision of services *other than those classified as Civic Uses*." (Emphasis added.)

As petitioners understand that provision, commercial and civic use classifications are mutually exclusive—at least as relevant here.

■    If the question confronting us were what the local provisions mean, then both arguments would be quite tenable. But that is not the question. Rather, it is whether the local interpretation is reversible under the deferential standard of review required by *Clark*. To be reversible under that standard, the local interpretation must be "clearly wrong." *Goose Hollow Foothills League v. City of Portland*, 117 Or App 211, 217, 843 P2d 992 (1992). In *Huntzicker v. Washington County*, 141 Or App 257, 261, 917 P2d 1051, *rev den* 324 Or 322 (1996), we explained that "clearly wrong" means that the reviewing tribunal must be able to "say that no person could reasonably interpret the provision in the manner that the local body did." We have also described "clearly wrong" as meaning "so wrong as to be beyond colorable defense." *deBardelaben v. Tillamook County*, 142 Or App 319, 324, 922 P2d 683 (1996). Further, we have emphasized repeatedly that LUBA's task and ours in reviewing a local interpretation under the *Clark* standard is not to resolve the question of "what the local legislation in fact means," nor is it "to provide an independent interpretation of local land use legislation that might appear preferable to the local government's." *Zippel v. Josephine County*, 128 Or App 458, 461, 876 P2d 854, *rev den* 320 Or 272 (1994); *Langford v. City of Eugene*, 126 Or App 52, 57, 867 P2d 535, *rev den* 318 Or 478 (1994).

Rather, the issue is whether the local government's interpretation, taken on its own terms, passes the "clearly wrong" test.

■ LDC 3.0.30 expressly *says* that a use can be classified under "one or more" use types, and the city council's interpretation is that the proposed use here can come within more than one use type—civic and commercial. Even assuming the correctness of petitioners' contention that that interpretation is contrary to the alternative language in LDC 3.0.30.03 on which they rely, the interpretation would nevertheless survive scrutiny under *Clark*. As we have previously indicated, under that decision, where more than one local legislative provision is arguably applicable and different local provisions might lead to different results, the "selection [among the provisions] is for the local deciding entity to make." *West v. Clackamas County*, 116 Or App 89, 93, 840 P2d 1354 (1992). Petitioners do not succeed in demonstrating that the city council was clearly wrong in concluding that the proposed facility could be assigned to more than one use type classification, nor do they offer any other persuasive reason why the council could not permissibly interpret the local legislation as allowing the facility to be classified as a "civic use type" of the university services and facilities variety.

Affirmed.